312 So.2d 306 (1975)
STATE of Louisiana
v.
Allen HAMMLER and Milton Holmes.
No. 55639.
Supreme Court of Louisiana.
April 24, 1975.
*307 Robert Glass, New Orleans, for Milton Holmes.
Ronald J. Rakosky, New Orleans, for Allen Hammler.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Louise Korns, Asst. Dist. Atty., for plaintiff-appellee.
BARHAM, Justice.
Allen Hammler and Milton Holmes were charged by bill of information with the armed robbery of the owner of the Caffin Food Store in Orleans Parish. After a joint trial by jury, each was convicted and sentenced to serve twenty-five years imprisonment at hard labor. Upon their appeal to this Court, they rely on seven specifications of error for reversal of their *308 convictions and sentences. We find reversible error in several of the specifications, and we will address ourselves to each of these in an attempt to insure that the errors not be repeated when the case is retried.
SPECIFICATION OF ERROR NUMBER 2
The principal error upon which we base our reversal of these convictions and sentences is found in specification of error number 2. The defendants complain that they were irremediably prejudiced by the trial judge's numerous intemperate remarks in the presence of the jury. Upon a review of the entire record, we find the defendants' complaints justifiable. Examples of the trial judge's remarks, which continued throughout the course of the trial, can be found in the Appendix to this opinion. In his per curiam, the judge states that his comments were necessitated by the repetitious questions and the disruptive trial strategy of the defense attorneys, and that he was merely "attempting to keep the proceedings within the bounds of propriety."
In State v. Simpson, 247 La. 883, 175 So.2d 255 (1965), this Court recognized the duty of a trial judge to control the argument of counsel pursuant to law, and held that even threatening to jail a defense counsel might be warranted by continued improper conduct on the part of counsel. We also held in Simpson that even if a judge's remarks are improper, they do not constitute reversible error unless they were so prejudicial that they could have influenced the jury or contributed to the verdict. We have reviewed the record in the instant case and find that while defense counsels' remarks and questions may have been somewhat repetitious occasionally, their conduct clearly did not merit or justify continuous reprimands of such severity.
The following language from Bursten v. United States, 395 F.2d 976, 983 (5th Cir. 1968) is pertinent:
"It is well known, as a matter of judicial notice, that juries are highly sensitive to every utterance by the trial judge, the trial arbiter, and that some comments may be so highly prejudicial that even a strong admonition by the judge to the jury, that they are not bound by the judge's views, will not cure the error.
"To be sure, admonition of counsel in hotly contested cases, * * * sometimes becomes requisite, even essential. Cf. United States v. Sacher, 182 F.2d 416 (2d Cir. 1950). It is preferable, of course, that such corrections be made outside of hearing of the jury, but, for such conduct to constitute ground for reversal, it must appear that in some way the judge's conduct operated to deprive the defendant of his right to an impartial trial, such as to deprive him of effective assistance of counsel, or adversely influencing and prejudicing the jury. If a trial court continually intervenes so as to unnerve defense counsel and throw him off balance, in a supposedly fair trial, and causes him not to devote his best talents to the defense of his client, then this is ground for reversal, no matter what counsel's experience and equipoise may be. Even if there is a basis for some criticism of overpartisanship, of defense counsel, this does not justify unwonted and unnecessary continuous interruption. A trial judge must strive for total neutrality and complete circumspection, in the eyes and minds of the jury." (Emphasis here and elsewhere supplied.)
We find that the many interventions by the trial judge in this case deprived the defendants of the fair trial to which they were constitutionally entitled. The cumulative effect of the judge's remarks was highly prejudicial to the defense, very possibly to the extent that the jury may have been given the impression that the judge considered the defendants' case to be of little substance. See United States v. Coke, 339 F.2d 183, 185 (2d Cir. 1964).
*309 We note that there was not even any attempt on the part of the trial judge to cure the prejudice engendered by his remarks. He consistently refused to admonish the jury upon request of defense counsel, and he also denied several requests by defense counsel to send the jury out of the room. Moreover, the remarks appear to have been directed solely at the defense, as no comparable criticism of the prosecution counsel can be found in the record. For these reasons, we find the remarks so prejudicial as to warrant reversal of the defendants' convictions and sentences and remanding of the case for a new trial.
SPECIFICATION OF ERROR NUMBER 3
At the December 13, 1972 hearing on the defense motion to suppress identification, one of the State's witnesses to the alleged robbery testified that he had been directed by the assistant prosecutor not to speak to any lawyers for the defense. On December 14, 1972, defense counsel filed a motion for an order to compel the witnesses to speak with the defense, seeking corrective action by the court. The motion alleged that defense counsel had attempted to speak with the two principal State witnesses and that both had refused, pursuant to instructions from the prosecutor. It was alleged that these instructions constituted violations of due process. The motion was denied. During the trial, defense counsel called the prosecutor to the stand and verified his instructions to the two witnesses. The prosecutor testified that the reason for his instructions to the witnesses was that he had received reports of harassment of the victims and witnesses by either friends or representatives of the defendants. However, he was unable to connect these charges directly to either of the defense attorneys.
It is our opinion that the prosecuting attorney's conduct in advising the witnesses not to speak to defense attorneys significantly interfered with the defendants' constitutionally guaranteed right to effective counsel because their counsel were denied the opportunity to adequately prepare a defense. This issue was before the District of Columbia Circuit Court of Appeals in Gregory v. United States, 125 U.S.App.D.C. 140, 369 F.2d 185 (1966), and that court held that an instruction by the prosecutor to government witnesses not to speak to defense attorneys unless a prosecution attorney was present mandated a reversal of the defendant's conviction. The court held that the defendant had been denied due process and also that the prosecution's conduct constituted a violation of the defendant's right to information favorable to him which was secured by Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).
The following language from Gregory is pertinent:
"* * * Witnesses, particularly eye witnesses, to a crime are the property of neither the prosecution nor the defense. Both sides have an equal right, and should have an equal opportunity, to interview them.
"* * *
"* * * [W]e know of nothing in the law which gives the prosecutor the right to interfere with the preparation of the defense by effectively denying defense counsel access to the witnesses. * * * Presumably the prosecutor, in interviewing the witnesses, was unencumbered by the presence of defense counsel, and there seems to be no reason why defense counsel should not have an equal opportunity to determine, through interviews with the witnesses, what they know about the case and what they will testify to. In fact, Canon 39 of the Canons of Professional Ethics makes explicit the propriety of such conduct: `A lawyer may properly interview any witness or prospective witness for the opposing side in any civil or criminal action without the consent of opposing counsel or party.' Canon 10 of the Code of Trial *310 Conduct of the American College of Trial Lawyers is an almost verbatim provision.
"We do not, of course, impugn the motives of the prosecutor in giving his advice to the witnesses. Tampering with witnesses and subornation of perjury are real dangers, especially in a capital case. But there are ways to avert this danger without denying defense counsel access to eye witnesses to the events in suit unless the prosecutor is present to monitor the interview. We cannot indulge the assumption that this tactic on the part of the prosecution is necessary. Defense counsel are officers of the court. And defense counsel are not exempted from prosecution under the statutes denouncing the crimes of obstruction of justice and subornation of perjury. * * *
"A criminal trial, like its civil counterpart, is a quest for truth. That quest will more often be successful if both sides have an equal opportunity to interview the persons who have the information from which the truth may be determined." 369 F.2d at 188.
SPECIFICATION OF ERROR NUMBER 4
This specification of error actually complains of two alleged errors. The first is the refusal of the trial judge to allow the defense to develop the circumstances surrounding the oral confessions of both defendants so that the jury could properly weigh the credibility of the confessions. The second is that the court improperly asserted before the jury that the ruling admitting the oral confessions necessarily decided their voluntariness and freeness.
According to the testimony of two officers, both defendants had made oral confessions; however, neither was recorded or reduced to writing, nor were any notes taken of them. In accordance with the requirement of La.R.S. 15:451, a hearing was held outside the presence of the jury, at the conclusion of which the judge ruled the statements free and voluntary, and therefore admissible. On cross-examination before the jury of one of the officers, defense counsel initiated a line of questioning in an attempt to bring to the jury's attention the circumstances surrounding the confessions. The judge refused to allow some of the questions of both defense counsel which sought to probe the circumstances of the confessions, insisting on numerous occasions that he had already ruled the confessions free and voluntary, and had thus made them a part of the evidence for the jury to consider. The defense moved for a mistrial several times, alleging comments on the evidence by the judge. The judge denied these motions and refused to admonish the jury to disregard his comments.
It is well-established law in Louisiana that the judge alone is vested with the responsibility of determining the admissibility of a statement, and that this must be done outside the presence of the jury. However, the judge's determination goes only to the legal question of whether the statement may be placed before the jury for consideration. The jury is the arbiter of what weight or effect shall be given to a confession, and therefore, the jury must have before it all the circumstances under which the confession was made. See, e.g., State v. White, 247 La. 19, 169 So.2d 894 (1964) and cases cited therein. In determining evidentiary weight, the jury necessarily must again weigh the factors which bear upon the voluntary character of the statement. It is from these circumstances that the jury may draw their conclusion for according evidentiary value to the statement.
A review of the record convinces us that the defense attorneys were thwarted in their attempts to properly place before the jury all the relevant circumstances. The trial judge's comments on his prior ruling as to the admissibility of the confessions served to compound the prejudice *311 already suffered by defendants in not being able to present the necessary evidence to the jury. These comments amounted to a violation of La.C.Cr.P. arts. 772 and 806, which prohibit comments on the evidence by a trial judge. We find this case distinguishable from the holding in State v. White, supra, because the judge in White instructed the jury that while he had found the statements to be free and voluntary, it was within their province alone to determine the weight, if any, to be given to the confessions. The jury in the instant case was never instructed as to their duty with regard to the confessions, or the effect of the judge's ruling as to admissibility on that duty.
SPECIFICATION OF ERROR NUMBER 5
On March 15, 1972, the defendants filed a motion for production and prayer for oyer in which, among other things, they sought a pretrial inspection of "any and all confessions, statements and admissions which are in writing, and which were made by the defendant[s] accused, either before or after [their] arrest[s] for the offense for which [they are] charged herein * * *." On April 7, 1972, the State answered that it had no written confession, statements or admissions in its possession. On the fourth day of trial, March 29, 1973, the prosecution introduced a copy of a letter allegedly sent by defendant Holmes from the Orleans Parish Prison which had been intercepted by a jailer on October 14, 1972. Defense objected to the letter several times during the laying of the foundation for its introduction and again prior to its introduction, all of which were overruled. The contents of those portions of the letter which the assistant district attorney read aloud to the jury follow:
"This is a letter from Milton Holmes, 531 South Broad Street, New Orleans, Louisiana, 70119, addressed to Mr. Samuel Jaboor Jobeel Joseph, St. John Parish Jail, Laplace, Louisiana, 70068 postmarked 14th of October, 1972.
'Hello, my brother. Well, I just received your letter and was more than happy to know that you is in cool condition. Man, like I can hold on if the rest of the fellows will. Brother, man, I've been confined for nine months and it looks as though all this is in my favor. But right now thing are just cool. My lawyer told me that the fellow who identified me is tired of coming to court, and he think that I should wait till he give in and stop coming. But you know how some of those Uncle Tom's mother f______ are. They will do anything for the pigs. Man, I can't say what's going to happen till I go to trial. About five months ago I went to court and they offer me five years. They offer me ten years. I told the D.A. to kiss my a. But I think that we have a chance in beating this. So, my brother, I'm hoping you beat that because we are going free over here. Man, I'm busted foul as a MF. Like I believe that bust me. I don't know for sure. That just my belief. Brother, you know that no one seen us when we came out. Now, to let you know about George. Well, they offer him ten years too, but he not taking it neither. But I don't believe he will go to trial with us. Sam, my sister and mother ask about you. They wanted to know whether you were back here or not. Look a here, when we went to shop up they were looking for a fellow with sideburns, so if you happen to come over here, cut them off. But no one can identify you. It been too long now. Sam, why didn't you leave like I told you. I know you wasn't in love, because you are too strong for that. But everybody plays a fool sometime. Before I forget, you can bring your chess set in here. Man, like all of the fellows that I have ever met in my life, you are one that I love like you are my real brother. And if there is anything that I can help you with while you are over there, just write and let me know. Well, my brother, this is about it for now and you will *312 be hearing from me again. Love always, Milton Holmes.'" (Tr. at 635-36).
The thrust of the defense objections was that the defendant had been denied his right to pre-trial discovery of the written confession. The trial judge's per curiam sets forth two reasons upon which the court based its refusals to sustain the defendant's objections. The first was that the letter had not been written until some seven months after the State's answer that it had no written confessions. The second was that the State would not have been legally bound to disclose the letter anyway because it was not a "written, custodial confession."
It is our opinion that the State's duty to disclose in response to a motion by defense must be a continuing duty if it is to secure the defendant's right to a constitutionally fair trial. The defense could hardly be expected to file a new motion for discovery of a statement subsequently acquired if it has no knowledge of the statement's existence or later acquisition. Further, under our holding in State v. Bendo, 281 So.2d 106, 110 (La.1973), even though "these statements were not obtained while the defendants were in the actual custody of the police, and would thus not be regarded as a confession in the traditional sense of the word, the fact remains that they are inculpatory as * * * defined and therefore within the Dorsey rule [State v. Dorsey, 207 La. 928, 22 So.2d 273 (1945)]." Thus, under Dorsey, this letter is a "written confession or written inculpatory statement" within the purview of La.C.Cr.P. art. 703. The trial court should not have permitted the introduction of this letter at trial because of the failure of the State to disclose it before trial.
We also reject the reasoning offered by the trial judge in his per curiam that the motion to suppress the letter "came too late." The basis of the motion was that the seizure and copying of the letter violated the defendant's Fourth Amendment rights.[*] Therefore, it was clearly a motion under La.C.Cr.P. art. 703(A), which requires the filing of the motion not later than three judicial days before trial "unless opportunity therefor did not exist or the defendant was not aware of the grounds for the motion." Since the motion was properly filed, and was timely under La.C.Cr.P. art. 703(A), supra, the defendant was entitled to a hearing on the motion to determine if his constitutional rights had been violated; failure to order such a hearing was reversible error under State v. Michelli, 301 So.2d 577 (La.1974).
We also take this opportunity to observe, in conjunction with our discussion of the letter, that the letter as it was read to the jury by the prosecution contained much irrelevant information, such as obscene language, racial epithets and a refused offer by the district attorney to accept a guilty plea, all of which was potentially very prejudicial to the defendant. See State v. Kaufman, 278 So.2d 86, 96 (La.1973).
*313 SPECIFICATION OF ERROR NUMBER 6
The defendants allege that the admission of both non-testifying co-defendants' oral confessions denied each defendant effective confrontation under Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). We do not undertake in this opinion to resolve the issue posed by defendants' allegations. We merely note that there exists at least a potential Bruton problem, of which the State should be mindful on retrial of the case.
SPECIFICATION OF ERROR NUMBER 7
Defendant Hammler complains that he was denied his right to compulsory process, as guaranteed by the Louisiana Constitution. Defendant sought to obtain the presence of two railroad employees as alibi witnesses, primarily because these two would have been the only alibi witnesses not related to or friends of the defendants. The sheriff made five attempts to serve these witnesses, but none of the attempts were made between 11:45 and 12:00 noon which, according to the instructions given him by defense counsel, was probably the only time period during which he would be able to find them at the railroad office.
We do not here resolve the question of whether the trial judge abused his discretion in refusing to reopen the defense case and to order instanter subpoenas, as requested. However, we do express our opinion herewith that the defendant was entitled to have service of process at least attempted during the time period within which he was certain that the witnesses could be served, since this would not seem to have been a time period which would have unduly interrupted the ordinary office procedure of the sheriff's office. We analogize the instructions to serve the witnesses within the stipulated time period, given as clarification by the attorney for the defendant, to instructions for service to take place at a specific address.
Defense counsel have urged us to remand this case to a different section of the Orleans Parish Criminal District Court for retrial. We believe that the matter addresses itself to a stipulation by the State and trial counsel or, alternatively, to a motion for recusation in the trial court.
For the reasons assigned, the convictions and sentences are reversed and the case is remanded for a new trial consistent with the views expressed herein.
SANDERS, C.J., and SUMMERS and MARCUS, JJ., dissent.
DIXON and CALOGERO, JJ., concur, agreeing fully with the treatment of bills 2, 3, 4, 5, 6 and 7, but believing that specification No. 2, while a close issue, does not present reversible error.

APPENDIX
Hereinafter quoted are excerpts from the record to illustrate some examples of the trial judge's improper interventions and prejudicial remarks, all of which occurred before the jury.
"DEFENSE:
If your honor please, I'd ask that the witness be directed to ...
"BY THE COURT:
I said he answered the questionfor the third time now. Go to another subject. (Tr. at 218)
"* * *
"DEFENSE:
I reserve a bill of exceptions, making a part thereof the line of questioning, the attitude as indicated ...
"BY THE COURT:
The what? The attitude?
"DEFENSE:
The attitude as indicated ...
*314 "BY THE COURT:
There's no such thing as attitude. Now, don't you come and make a speech. There's no such thing as attitude.
"DEFENSE:
I'll be glad to have the jury go out while I reserve my bill.
"BY THE COURT:
"You're not going to turn this into a filibuster. (Tr. at 233-34)
"* * *
"DEFENSE:
Q. How long did he remain in the Detective Bureau?
"WITNESS:
A. He said he wanted to confess and make a statement.
"DEFENSE:
If your honor please, I call for a mistrial at this time. That was not a responsive answer.
"BY THE COURT:
Motion is denied. You're deliberately going into that area. Why did you bring that question out?
"DEFENSE:
I would like the jury to be removed at this time. Under the Code, when I request it, the court shall remove the jury. (Tr. at 238)
"* * *
"DEFENSE:
Your honor, in State versus ...
"BY THE COURT:
I say it's hearsay.
"DEFENSE:
I would like to reserve my bill and make a part of it State v. Wilkerson which holds that evidence of an identification is not necessarily hearsay, number one. Number two, this is evidence exculpatory to the defense and without allowing that testimony in, the court is denying the defendant a right to a fair trial. I would like to make that part of my bill.
"BY THE COURT:
That has absolutely no merit and the statement of law is 100% incorrect. For that reason I'm denying it. I have State v. Wilkerson in my hand. I read it three or four times already this morning. For those reasons, the motion is denied. (Tr. at 241)
"* * *
"DEFENSE:
Is the court ready for me to proceed, your honor?
"BY THE COURT:
Yes. I've been ready a long time for you. (Tr. at 513)
"* * *
"BY THE COURT:
You had Mr. Dubroc here. You pulled a filibuster on him, too.
"DEFENSE:
If your honor please, I object to the court's remarks. This is not a filibuster in any sense of the word. The identification of a defendant on a trial is one of the most essential parts of this case, and I have a right ...
"BY THE COURT:
You better believe it is. (Tr. at 520)
"* * *
"DEFENSE:
And I have a right to go into the nature and the extent and the reliability of that identification.
*315 "BY THE COURT:
You're supposed to observe the rules and I determine the rules. Now, get on to another subject.
"DEFENSE:
What I wanted to do was to save time.
"BY THE COURT:
Don't tell us what you wanted to do. I said to get on to another subject.
"DEFENSE:
In order to protect the record, to the ruling of the court refusing to permit me to go into the foundation
"BY THE COURT:
And the ruling of the court is to preclude you from getting into some incompetent, irrelevant and immaterial evidence and the ruling is further to try to start to limit you and your colleague from this superabundance of redundance. (Tr. at 521)
"* * *
"DEFENSE:
To his honor's ruling the defense respectfully reserves a bill of exceptions, making a part thereof the lineup testimony, the beginning of the cross-examination ...
"BY THE COURT:
Let's do this. To save you any trouble, let's make the whole record part of everything so you can stop that extra five minute speech. From now on, everything is part of the record so you can stop that five minute speech you're trying to put in every once in a while. (Tr. at 526)
"* * *
"DEFENSE:
If your honor please, I ask that the witness be admonished.
"BY THE COURT:
I am satisfied that he answered the question. He didn't perhaps answer it the way you wanted it, but he answered it. (Tr. at 528)
"* * *
"DEFENSE:
If your honor please, the Louisiana Supreme Court has required in numbers of cases that before objection can be heard ...
"BY THE COURT:
I told you just to include the whole record and that's it because I'm not going to let you make this thing more redundant than you're doing. (Tr. at 536)
"* * *
"BY THE COURT:
Now, what is the purpose of this question? What is your purpose here? We've been over this many, many hours. Now, what is your purpose now? To go into the freeness and voluntariness of the confession again? I have ruled emphatically it is free and voluntary. It can be for no other purpose but to contravene that ruling and I ruled it already. (Tr. at 537)
"* * *
"DEFENSE:
Maybe we should approach the bench.
"BY THE COURT:
You don't approach me. Sit down and try your case.
"DEFENSE:
If your honor please, it's very difficult.
"BY THE COURT:
If you're going to continue to be redundant, it's going to be difficult.
"DEFENSE:
If your honor please, the purpose of the question concerning typewritten confessions has nothing to do per se with free and voluntariness.
*316 "BY THE COURT:
I interpret it as it did. Go to something else.
"DEFENSE:
Reserve a bill to his honor's ruling. I would like to know whether or not the court's ruling extends to all questions concerning. . .
"BY THE COURT:
No, no. Don't put me on the examination chair. I told you to go to another subject. (Tr. at 538)
"* * *
"BY THE COURT:
I rule it's irrelevant. Go on to another subject.
"DEFENSE:
I've got to be able to state my reasons for the record.
"BY THE COURT:
No, you're not going to make a speech again. Reserve your bill.
"DEFENSE:
If the court would like, I would state my reasons in writing so it doesn't take up the court's time.
"BY THE COURT:
No, don't worry about taking up the court's time. I ruled it's irrelevant and I have the right under the lawand I've been most liberalI have a right to curtail this redundancy. I have the duty to. Now, go to another subject. (Tr. at 540)
"* * *
"BY THE COURT:
Well, I say he has. Let's go to another subject. You've been talking for forty-five minutes or more. He's answered you many, many times. (Tr. at 549)
"* * *
"BY THE COURT:
You won't lose so much time if you would sit right there so you can couch him, right close. Sit down over there.
"DEFENSE:
To the court's comments concerning [counsel for Hammler] and myself I reserve a bill of exceptions.
"BY THE COURT:
I order you to sit down for your interrogation. I order you to sit in your chair.
"DEFENSE:
I reserve a bill of exceptions to the court's comments and to the court limiting me to where I can stand and talk. I reserve another bill. I would like the record to show that I have sat down at the court's instruction.
"BY THE COURT:
So that the record may be clear, I permitted counsel to go on at greath length to come and interrogate the witness at the cross-examination ...
"DEFENSE:
If your honor please, I would move that the ...
"BY THE COURT:
And it's been a little bit disconcerting to have him run back five or ten feet over to his colleague to be prompted or couched or reminded of things. It has consumed considerable time and further it is proper that examination be conducted from the lawyer's bar, and in addition to that it would conserve time if he were right next to his colleague where they could confer together.
"[COUNSEL FOR HAMMLER]:
If your honor please, I'm going to take exception to the reference to myself and Mr. Glass as colleagues. I have nothing whatsoever to do with it except the fact that I represent the co-defendant and that *317 is only because the state has elected to try these defendants jointly.
"BY THE COURT:
Let it be reserved. (Tr. at 555-56)
"* * *
"BY THE COURT:
Now, what relevancy would that have?
"DEFENSE:
If your honor please, this is cross-examination. I do not have to disclose my purpose every time I open my mouth.
"BY THE COURT:
I can't permit you to go all around the world.
"DEFENSE:
It was went into on direct examination by the district attorney when this witness. . .
"BY THE COURT:
I preclude the question. (Tr. at 557)
"* * *
"DEFENSE:
If your honor please, I believeit is my position that the voluntariness of any statements attributed to ...
"BY THE COURT:
That's been determined. The voluntariness of the statement has been determined already. It's a matter of fact and it's a matter of law. I have determined the voluntariness. That's done in accordance with Supreme Court pronouncements, more recently the Twomey Case.
"DEFENSE:
If your honor please, it is my appreciation of ...
"BY THE COURT:
I disagree with you. I read the case with you on several occasions.
"DEFENSE:
That's quite correct, your honor. Lego versus Twomey does not prohibit the state from having a stricter procedure and Louisiana has such a procedure.
"BY THE COURT:
Well, I find that it does.
"DEFENSE:
Do I understand your honor's ruling to preclude any questioning in this area?
"BY THE COURT:
Now, you know that's an improper question. You don't get me committed to a million things. I will rule as I go along. There's no such thing as that. (Tr. at 590)
"* * *
"BY THE COURT:
I don't see the relevancy of these times. I've just let him [defense counsel] go to see if he could stumble on something. Go to another subject other than these times. (Tr. at 604)
"* * *
"DEFENSE:
If your honor please, I don't know what this is all about and I ask that the jury be excused at this time so I can understand what's going on.
"BY THE COURT:
He wants a handwriting exempt law.
"DEFENSE:
I would like to find out what purpose this is for and everything else. I don't know a thing about this. This is the first time I've ever heard of it. I ask that the jury be excused.
"BY THE COURT:
You want him to send you a registered letter?
*318 "DEFENSE:
I ask that the jury be excused.
"BY THE COURT:
Denied. Let's go. (Tr. at 615)
"* * *
"BY THE COURT:
Go to another subject. It's immaterial.
"DEFENSE:
If your honor please, the circumstances. . .
"BY THE COURT:
I say it's immaterial. You're deliberately trying to clutter this thing up. (Tr. at 564)
"* * *
"BY THE COURT:
I just want to let you know that I didn't preclude you from cross-examination. I think your cross-examination was redundant and irrelevant and I believe you were slightly contemptuous." (Tr. at 566-67)
NOTES
[*] The trial court and the State should note an issue which is not precisely presented to us under a delineated specification of error. However, upon our review of the trial court's ruling that defendant was not entitled to a hearing on his motion to suppress the letter intercepted in the course of censoring defendant's mail during his pretrial incarceration, our attention is drawn to a threshold question which the trial court must consider. Defendant's motion to suppress the letter on constitutional grounds as being violative of his Fourth Amendment right to be free from unreasonable searches and seizures, his Fifth Amendment right against self-incrimination, his Sixth Amendment right to counsel and his Fourteenth Amendment right to due process and equal protection presents a serious question of law. Only the evidence presented on a motion to suppress can determine the constitutionality of the seizure of this letter and its use as evidence at the trial. The State is, therefore, given notice of this possible error and the court is instructed to hold a hearing on the motion to suppress so that an adequate evidentiary basis can be laid for a ruling on the issue. See Anno., Censorship and Evidentiary Use of Unconvicted Prisoners' Mail, 52 A.L.R.3d 548 (1973).