339 So.2d 764 (1976)
STATE of Louisiana
v.
Lonnie Carl MAY.
No. 57978.
Supreme Court of Louisiana.
November 8, 1976.
Rehearing Denied December 10, 1976.
*768 R. Bradley Lewis, Talley, Anthony, Hughes & Knight, Bogalusa, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Woodrow W. Erwin, Dist. Atty., John N. Gallaspy, Second Asst. Dist. Atty., for plaintiff-appellee.
DENNIS, Justice.
Lonnie Carl May was charged by bill of information with having participated in the April 27, 1975 armed robbery of Virginia Duncan, an employee of the Quick Shop Grocery located in Bogalusa, Louisiana, in violation of La.R.S. 14:64. May pleaded not guilty to the charge, and was subsequently convicted by the unanimous verdict of a twelve-man jury. The trial judge sentenced defendant to serve sixteen years at hard labor. May relies on fifteen of sixteen assigned errors for reversal of his conviction and sentence, having abandoned one of his assignments of error.
Two co-indictees, Joe Louis and Charles Sims, Jr., pleaded guilty to armed robbery, and were sentenced to serve twelve and nine years respectively. According to the State's theory of the case, Joe Louis entered the store armed with a gun, and robbed Virginia Duncan, an employee at the store; Charles Sims, Jr., also armed, stayed outside as a lookout, and Lonnie Carl May, the present defendant, drove the getaway car, in an attempt to make good their escape. At trial, defendant took the stand and testified that, although he was with Louis and Sims both before and after the robbery, he did not agree to or participate in the commission of the crime. May claimed he left Sims and Louis before they went to the Quick Shop Grocery, in order to purchase some fried chicken at a nearby fast-food store and that when he returned to the car he merely waited for Sims and Louis, not knowing they were engaged in a robbery. Once they returned, May asserted, he drove away, not even aware that a robbery had occurred.
To establish May's complicity in the offense, the State relied principally on the testimony of May's alleged co-participant, Joe Louis. Louis testified that prior to the robbery, he, Sims and May had discussed robbing a store, though not specifically the Quick Shop Grocery. In Louis' words, "we're going out and make some money." When Louis and Sims returned from the store, May was waiting, with the motor running. And, according to Louis' testimony, after the robbery the money was divided among all three.
The State produced a witness, fourteen year old Joseph Magee, who claimed to have seen the defendant near the car by the Quick Shop Grocery, holding a gun and a bag. Two other unidentified men were, according to Magee's testimony, sitting in the car, and the car's motor was running.
ASSIGNMENT OF ERROR NO. 1
In his motion for bill of particulars, defense counsel asked the prosecutor to "* * * state specifically the facts which show the nature and causes of the charge or charges against the defendant." The State responded that no answer was required. The trial court found the State's response sufficient.
Defendant urges that the trial court erred in not requiring the State to respond to his request, citing Article I, § 13 of the Louisiana Constitution of 1974, and the Louisiana Code of Criminal Procedure article 484. Of course, these provisions entitle an accused to be informed of the "nature *769 and cause" of the charges brought against him.
While there is no doubt that an accused is to be informed of the nature and cause of the charges lodged against him, e. g., State v. Miller, 319 So.2d 339 (La.1975), the rights vouchsafed by the foregoing provisions do not include discovery of the State's evidence or of the details of the State's case. State v. Jenkins, 338 So.2d 276 (La.1976); State v. Huizar, 332 So.2d 449 (La.1976); State v. Nix, 327 So.2d 301 (La.1976); State v. Knight, 323 So.2d 765 (La.1975); State v. Major, 318 So.2d 19 (La. 1975).
In the present case the bill of information together with the bill of particulars informed the defendant of the crime charged, the identity of the alleged victim, and the place and approximate time that the offense allegedly occurred. Defendant was adequately informed of the nature and cause of the charges brought against him. Thus, we find no abuse of the trial court's discretion in refusing to compel the State to respond to defendant's request by furnishing him additional details and facts relative to his participation in the commission of the crime. State v. Alexander, 334 So.2d 388 (La.1976); State v. Vince, 305 So.2d 916 (La.1974).
ASSIGNMENT OF ERROR NO. 2
Prior to trial, defendant filed a motion for the production of all exculpatory evidence and information under Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The State disclaimed possession of exculpatory evidence. Defendant argues that "[l]eaving the decision as to what [evidence] is favorable and what is unfavorable to the prosecutor simply is not sufficient to implement the requirements of Brady." Defendant urges that the trial court be required, either to conduct an in camera examination of the State's files, as suggested by the United States Court of Appeals in Flanagan v. Henderson, 496 F.2d 1274 (5th Cir. 1974) and Williams v. Button, 400 F.2d 797 (5th Cir. 1968), or allow the defendant through counsel to examine them. These same arguments were rejected by this Court in State v. Major, 318 So.2d 19 (La.1975), wherein we held:
"* * * [A] criminal conviction is not subject to reversal merely because the State did not, before, during or after trial, open its evidence file to defense or court scrutiny." 318 So.2d at 21.
A more serious question is presented by this defendant's assignment of error, for not only did defendant generally ask for exculpatory material which might be in the State's possession, defendant also asked with particularity for a letter allegedly authored by Charles Sims, Jr., a co-indictee, which defendant claimed contained statements by Sims that he and Louis were the robbers and that Lonnie Carl May did not participate in the crime. The State never specifically denied having this letter. The State's sole response to defendant's entire "Brady motion" was the general assertion that it had no exculpatory evidence. The trial judge felt constrained to believe the prosecutor's assertion, and therefore overruled defendant's motion for production of exculpatory material in its entirety.
In Brady v. Maryland, supra, the United States Supreme Court held that the suppression of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good or bad faith of the prosecution. However, in determining what is material evidence in the myriad fact situations in which suppression claims arise, courts and scholars have experienced great difficulty in defining a standard of general applicability. See cases cited in Annotation, Withholding or Suppression of Evidence by Prosecution in Criminal Case as Vitiating Conviction, 34 A.L.R.3d 16 (1970); Comment, The Prosecutor's Constitutional Duty to Reveal Evidence to Defense, 74 Yale L.J. 136 (1964); Comment, Brady v. Maryland and the Prosecutor's Duty to Disclose, 40 U.Chi.L.Rev. 112 (1972). In response to these gropings the United States Supreme Court has again spoken and, in doing so, has enunciated *770 some principles applicable to the instant case.
The high court, in United States v. Agurs,___ U.S.___, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976) held that
"* * * Although there is, of course, no duty to provide defense counsel with unlimited discovery of everything known by the prosecutor, if the subject matter of such a request is material, or indeed if a substantial basis for claiming materiality exists, it is reasonable to require the prosecutor to respond either by furnishing the information or by submitting the problem to the trial judge. When the prosecutor receives a specific and relevant request, the failure to make any response is seldom, if ever, excusable." 96 S.Ct. at 2399.
If the letter requested by defendant exists and contains statements of the nature he claims, there is at least "a substantial basis for claiming materiality exists," and the prosecutor should have either furnished the letter or have submitted the problem to the judge, instead of making the general response that he held no exculpatory evidence. In addition to Brady v. Maryland itself, there are many cases in which courts have held improper the non-disclosure of a statement exculpating the defendant given to the prosecution by a participant in the crime charged. E.g., People v. Kucala, 7 Ill.App.3d 1029, 288 N.E.2d 622 (1972); Nash v. Purdy, 283 F.Supp. 837 (D.C.Fla.1968); Smith v. Urban, 245 Ark. 781, 434 S.W.2d 283 (1968); People v. Cotto, 28 App.Div.2d 1116, 285 N.Y.S.2d 247 (1967); Wiman v. Powell, 293 F.2d 605 (5th Cir. 1961). Cf. State v. Cahill, 125 N.J.Super. 492, 311 A.2d 760 (1973); Nelson v. State, 59 Wis.2d 474, 208 N.W.2d 410 (1973). Although admissibility of the evidence sought alone does not determine whether "a substantial basis for claiming materiality exists" it is at least a factor to be considered. Under Louisiana law there are several instances in which a confession or statement by an alleged confederate exonerating a defendant could be used as admissible evidence by the defense: for impeachment purposes if the author of the statement is called by and testifies favorably for the State; for purposes of impeachment if the witness is called by defense and gives testimony that surprises or displays hostility toward defendant as provided by La.R.S. 15:487; for corroboration of the witness's testimony, in the event the State attempts to impeach him, in accordance with La.R.S. 15:496; for purposes of calling the witness on cross-examination under Chambers v. Mississippi, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973), which held, on somewhat similar facts, that a state's rules excluding hearsay and prohibiting a party from impeaching his own witness must yield to defendant's right to a trial in accord with traditional and fundamental standards of due process.
Additionally, we observe that Sims, had he been called by the defense, could have refused to testify as to the events surrounding the crime by exercising his constitutional privilege against self-incrimination. United States Constitution, Amendment 5; Louisiana Constitution Article I, § 16 (1974). Although we need not resolve the question at this time, it is at least arguable that the letter, had it been made available to the defendant, would have been admissible despite its hearsay character as a declaration against Sims' penal interest, Sims' testimony being "unavailable" because of his exercise of his constitutional privilege. See State v. Gilmore, 332 So.2d 789 (La. 1976).
Therefore, we conclude that the trial court fell into error in not requiring the prosecutor to respond to the specific request of the defendant for the letter by stating whether the State had knowledge or possession of it, and, if so, by not requiring the prosecutor to furnish it to defendant or submit it to the court for a determination as to whether it constituted material to which defendant was not entitled. Nevertheless, the error may not be reversible, because the United States Supreme Court, in United States v. Agurs, supra, in delineating the "significant and practical difference between the pre-trial decision of the *771 prosecutor [and, at times, the judge as we read the opinion], and the post-trial decision of the judge" on the issue of disclosure stated:
"The proper standard of materiality must reflect our overriding concern with the justice of the finding of guilt. Such a finding is permissible only if supported by evidence establishing guilt beyond a reasonable doubt. It necessarily follows that [in a post-trial hearing by the court] if the omitted evidence creates a reasonable doubt that did not otherwise exist, constitutional error has been committed. This means that the omission must be evaluated in the context of the entire record. If there is no reasonable doubt about guilt whether or not the additional evidence is considered, there is no justification for a new trial. On the other hand, if the verdict is already of questionable validity, additional evidence of relatively minor importance might be sufficient to create a reasonable doubt." 96 S.Ct. at 2401-02.
Accordingly, we will remand the case to the trial court for it to determine, in the light of United States v. Agurs, supra, and our opinion herein, (1) if there was a suppression of subject matter requested for which there was a substantial basis for claiming that materiality existed, and, if so, (2) whether the material suppressed by the State would upon its evaluation in the context of the entire record create a reasonable doubt as to the defendant's guilt. Should the trial court find such a reasonable doubt exists after its evaluation, a new trial will be required. If the trial court finds there was no suppression of material which should have been disclosed, or if it finds, after an evaluation as described, there is no reasonable doubt as to the defendant's guilt, the conviction and sentence will be affirmed. Of course, the proceedings and determinations of the trial court will be subject to review by this Court on appeal.
ASSIGNMENT OF ERROR NO. 3
Prior to trial defense counsel unsuccessfully attempted to interview Patrolman Willis Yarbrought, one of the police officers who investigated the crime, and Rose Saraceno, an eye witness to the crime and an employee of the Quick Shop Grocery. Defendant, relying on State v. Hammler, 312 So.2d 306 (La.1975), filed a motion to compel these witnesses to speak with defense counsel, or in the alternative, to bar their testimony at trial. Defendant contends the trial court erred in overruling his motion. In State v. Hammler, this Court declared,
"It is our opinion that the prosecuting attorney's conduct in advising the witnesses not to speak to defense attorneys significantly interfered with the defendants' constitutionally guaranteed right to effective counsel because their counsel were denied the opportunity to adequately prepare a defense." 312 So.2d at 309.
However, the transcript of Yarbrough's testimony at the hearing on defendant's motion, convinces us that, while his superiors did not encourage him to talk with counsel, neither did they advise or instruct him to refuse to talk with counsel. Therefore, defendant's reliance on State v. Hammler is misplaced.
Likewise, the record indicates that Rose Saraceno declined to meet with counsel on the instruction of her employer, Mrs. Scianna, and not because of instructions by the police or the district attorney's office.
Thus, defendant's third assignment of error is without merit.
ASSIGNMENT OF ERROR NO. 4
Prior to trial defendant filed a motion for discovery, asking for "* * * any and all information and evidence in the possession of the State relating to the alleged offense or offenses of which the defendant is charged * * *." Defendant assigns as error the trial court's ruling denying that motion.
This Court has consistently held that the State need not produce its evidence for pre-trial inspection by the defense. State v. Ball, 328 So.2d 81 (La.1976); State v. Nix, 327 So.2d 301 (La.1976); State v. Howard, 325 So.2d 812 (La.1976); State v. White, 321 *772 So.2d 491 (La.1975); State v. Major, 318 So.2d 19 (La.1975). Such broad discovery is not compelled as a matter of due process.
This Court is not prepared at this time to depart from those decisions and to order full discovery in criminal cases. Defendant's fourth assignment of error lacks merit.
ASSIGNMENT OF ERROR NO. 5
During voir dire examination the trial judge refused to allow defense counsel to propound the following questions to the prospective jurors:
"Now, would any member of the jury require the Defense to present evidence to explain some evidence of guilt?
"* * *
"Would any member of the jury have a tendency to believe the testimony of a police officer over the testimoney [sic] of a lay-witness, solely based on the fact that he is a police officer? * * *
"* * *
"* * * [Do any of you prospective jurors believe] that a man in this country could be convicted when he was innocent."
Defendant contends the trial court's rulings constituted reversible error.
While the jurisprudence of this State gives the trial court discretion to limit the scope of voir dire examination, State v. Nix, 327 So.2d 301 (La.1976); State v. Jones, 320 So.2d 182 (La.1975), the trial judge must give wide latitude to counsel in the conduct of voir dire examination in order to effectuate the accused's rights embodied in Article I, § 17 of the Louisiana Constitution (1974), and La.Code of Criminal Procedure article 786. State v. Monroe, 329 So.2d 193 (La.1976). See also, State v. Jones, 282 So.2d 422 (La.1973); State v. Hills, 241 La. 345, 129 So.2d 12 (1961).
A careful reading of the entire record of the voir dire examination convinces us that counsel was able to get his point across by rephrasing the questions. Under the circumstances we find that the trial judge did not abuse his discretion in this case.
In view of the foregoing, defendant's fifth assignment of error lacks merit.
ASSIGNMENT OF ERROR NO. 6
Defendant contends the trial court erred in denying his challenge of prospective juror Malcolm Adams for cause. During the course of voir dire, it was established that Adams lived next door to Mrs. Scianna, the owner of the Quick Shop Grocery, and in the same neighborhood as Rose Saraceno, one of the employees in the store at the time it was robbed. Because the trial judge refused to excuse Mr. Adams for cause, counsel was required to exercise one of defendant's peremptory challenges. Defendant subsequently exhausted his peremptory challenges, and was therefore compelled to accept as a juror an owner of a small grocery store similar to the one allegedly robbed by the accuseda sound basis in counsel's view for exercising a peremptory challenge.
Defendant relies on La.Code of Criminal Procedure article 797 and urges that "[i]t is reasonable to conclude that Mr. Adams would have been influenced in arriving at a verdict by the fact that the owner of the store allegedly robbed was his next door neighbor and that another member of his neighborhood was one of the clerks in the store at the time of the robbery. * * *"
Mr. Adams testified, however, that he did not know Mrs. Scianna and Rose Saraceno well and his acquaintance with them would not affect his partiality.
We find no abuse of the judge's discretion in this instance. See, State v. O'Conner, 320 So.2d 188 (La.1975).
For the foregoing reasons, defendant's sixth assignment of error lacks merit.
ASSIGNMENTS OF ERROR NOS. 7 and 8
In the presentation of its case against the accused, the State called Sergeant Donald Penton of the Bogalusa Police Department. In the course of his examination *773 of Sgt. Penton the State's attorney asked him whether Joseph Magee, a fourteen year old witness previously called by the State, had identified the car used by the robbers when he was interviewed by the police at the station. Sgt. Penton testified that Magee identified the car in which the defendant was arrested as the one he observed at the Quick Shop Grocery. Defense counsel objected to Sgt. Penton's answer as hearsay. The State's attorney correctly argued that Magee had previously testified he identified the car at the police station, and that Sgt. Penton's testimony was merely corroborative of Magee's earlier testimony. The trial court overruled his objection on the ground that the testimony was part of the res gestae, and therefore not subject to the hearsay ban. In this respect the trial judge was in error. "Res gestae are events speaking for themselves under the immediate pressure of the occurrence, through the instructive, impulsive and spontaneous words and acts of the participants, and not the words of the participants when narrating the events. * * *" (Emphasis supplied.) La.R.S. 15:447. That the witness's identification of the car took place shortly after the event does not make that identification part of the res gestae. According to La.R.S. 15:448, the res gestae consists of the circumstances and declarations which are "* * * necessary incidents of the criminal act, or immediate concomitants of it. * * *" (Emphasis added.) Magee's identification of the car was neither the result of the immediate pressure of the occurrence, nor a necessary incident of the criminal act or an immediate concomitant thereof. Time alone is not the measure of res gestae.
Defendant assigns as error the trial court's ruling in admitting the hearsay identification testimony.
A similar issue was presented to this Court in State v. Ford, 336 So.2d 817 (La. 1976), and in that case we declared that assertive acts as well as verbal communication were hearsay, and excludable under the general hearsay ban. La.R.S. 15:434. In so holding we specifically overruled State v. St. Amand, 274 So.2d 179 (La.1973). Nevertheless, we held in Ford that the State's introduction of hearsay identification testimony was not reversible error because it was merely cumulative and corroborative of prior testimony given by the declarant. See also, State v. Smith, 285 So.2d 240 (La.1973); State v. Maiden, 258 La. 417, 246 So.2d 810 (1971).
State v. Ford, supra, is controlling in the present case. Joseph Magee had previously testified as to his identification of the automobile. Sgt. Penton's hearsay testimony as to Magee's identification of the car was merely cumulative and corroborative of that prior testimony. The erroneous introduction of hearsay evidence was harmless. La.C.Cr.P. art. 921.
The State's attorney also attempted to elicit from Sgt. Penton testimony concerning Magee's identification of the accused at the station.[1] Defendant's objection that the question was improper interrupted the witness's testimony so that the jury learned only that Magee identified someone at the police station. The State's attorney, after the argument on the objection, neglected to renew the inquiry; he never asked Sgt. Penton if Magee identified Lonnie Carl May.
Had Sgt. Penton clearly related to the jury Magee's identification of the defendant, then reversible error would likely have been committed under the rule announced by a majority of this Court in State v. Jacobs (La.1976), Mo. 57,629 because Magee because Magee had not previously testified as to his identification of the accused. Thus the rule of State v. Ford, supra, would have been inapplicable.[2]
*774 For the reasons given defendant's seventh and eighth assignments of error present no ground for reversal.
ASSIGNMENT OF ERROR NO. 9
This assignment of error, having been neither briefed nor argued is abandoned. See, State v. Russell, 334 So.2d 398 (La.1976).
ASSIGNMENT OF ERROR NO. 10
Defendant assigns as error the trial judge's refusal to read to the jury the following requested special charge:
"That armed robbery is a crime of specific intent and that in order to be a principal to armed robbery one must have had specific intent to commit the acts which would make him a principal to armed robbery."
The trial judge, concluding that armed robbery is a crime of general intent, denied defendant's request on the ground that the instruction was an incorrect statement of the law.
La.R.S. 14:64 defines armed robbery as "the theft of anything of value from the person of another or which is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon." La.R.S. 14:67 defines theft as "the misappropriation or taking of anything of value which belongs to another, either without the consent of the other to the misappropriation or taking, or by means of fraudulent conduct, practices, or representations. An intent to deprive the other permanently of whatever may be the subject of the misappropriation or taking is essential." (Emphasis supplied.) La.R.S. 14:11 in pertinent part provides "* * * in the absence of qualifying provisions, the terms `intent' and `intentional' have reference to `general criminal intent.'" Of course, La.R.S. 14:10 defines both general and specific criminal intent.
Based on our reading of these provisions we are unable to conclude, as did the trial judge, that armed robbery is not a specific intent crime. Nevertheless, we find that the trial judge's refusal to charge the jury as requested is not reversible error in this case.
In its general charge, the trial court included the following comments:
"* * * In order, therefore, that the crime of robbery be complete, it is necessary as in theft that the accused should have taken something of value from the prosecuting witness, and it also must be taken with the intention of depriving the other permanently of the thing taken, and with the intention of appropriating it to the taker's own use. In plain words, it must be taken by the accused with the intent of stealing it. * * *
"* * * It is essential that the State should prove not merely the use of force or intimidation and the taking of the thing of value from the prosecuting witness, but also that the taking was with the intent to commit a theft. Thus, if the thing is taken under a claim of right, though it be done by intimidation, the act will not be robbery. * * *"
"* * *
"* * * I read you the law of principal; that is, what the law says: `All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission or directly or indirectly counsel or procure another to commit the crime are principals.' * * *"
La. Code of Criminal Procedure article 807 in pertinent part provides:
"* * *
"A requested special charge shall be given by the court if it does not require qualification, limitation, or explanation, and if it is wholly correct and pertinent. It need not be given if it is included in *775 the general charge or in another special charge to be given."
In the present case the substance of defendant's requested charge was conveyed by the judge's general charge, which satisfied the requirements of law and properly summarized the rule as to culpability of principals. Under article 807, the trial court properly refused defendant's charge.
Defendant's tenth assignment of error is without merit.
ASSIGNMENT OF ERROR NO. 11
Defendant urges that the trial court committed reversible error in refusing to give the following requested special charge:
"Conviction of a crime cannot be based on the uncorroborated testimony of a purported accomplice if such testimony is self-contradictory, uncertain or improbable."
As a general principle of Louisiana law, a conviction can be sustained on the uncorroborated testimony of a purported accomplice, although the jury should be instructed to treat such testimony with great caution. State v. Matassa, 222 La. 363, 62 So.2d 609 (1953).
The trial judge gave the following instruction which we find sufficiently covers the charge requested by the defendant:
"* * * An accomplice is defined as one who is associated with another in the commission of a crime and an accomplice is a competent witness, either for the State or for the defendant. Whether the accomplice has been convicted or not, whether he has pleaded guilty or nol praus [sic] or dismissal has been entered into, or whether he be joined in the same Bill of Information or indictment with the person on trial or not, corroboration is desirable, but it is not always indispensible. The jury may convict on his uncorroborated testimony. And while it is not the rule of law, it is rather the rule of our experience in dealing with that class of testimony that while you may convict upon the uncorroborated testimony of an accomplice, still you should act upon his testimony with great caution, subject to great careful examination of the weight of the other evidence in the case. And you are not to convict upon such testimony alone unless satisfied, after a careful examination of its truth, that you feel you can safely rely on it. What the law means by corroboration of the testimony of an accomplice is not merely the corroboration of the accomplice's narrative and the mere details of how the crime was committed or the crime charged was committed, but some real and independent corroboration intending to implicate the defendant in the commission of the offense charged. It is not sufficient to corroborate an accomplice as to the facts of the case. Generally, he should be corroborated as to some material fact which tends to prove that the accused was connected with the crime that's charged. * * *"
The trial court's refusal to give the requested charge was proper under La.Code of Criminal Procedure article 807.
Defendant's eleventh assignment of error therefore lacks merit.
ASSIGNMENT OF ERROR NO. 12
During the course of closing argument the State's attorney made several statements characterized by the defendant as improper and prejudicial.
Defendant first refers to the following statement made by the prosecutor after he had summarized the State's evidence against the accused:
"* * * Now, so far as I'm concerned, after hearing that evidence, he is guilty, and there is no question in my mind about it. * * *"
Defendant contends this comment mandates reversal as a prohibited assertion of the prosecutor's personal belief in the guilt of the accused. We disagree.
Admittedly the personal opinions of the prosecutor as to the guilt of the accused have no place in proper argument before the trier of fact. See, La. Code of Professional Responsibility, Ethical Consideration *776 7-24, and Disciplinary Rule 7-106(C); ABA Standards, The Prosecution Function, § 5.8 (1971). The jurisprudence of this State clearly reprobates the prosecutor's interjection of his personal opinion as to the accused's guilt where the prosecutor intimates that evidence not presented to the jury points to the defendant's guilt. State v. Kaufman, 304 So.2d 300 (La.1974); State v. Landry, 262 La. 32, 262 So.2d 360 (1972); State v. Sercovich, 246 La. 503, 165 So.2d 301 (1964).
However, the State's attorney can unquestionably comment on inferences supported by evidence adduced at trial. State v. Thomas, 325 So.2d 593 (La.1976); State v. Reeves, 263 La. 923, 269 So.2d 815 (1972); State v. Curry, 262 La. 280, 263 So.2d 36 (1972).
Determining whether specific language used by the prosecutor falls within the sphere of impermissible argument is no simple task, as the precise line between permissible and impermissible argument is difficult to fix. In the present case the allegedly improper statement was preceded by a lengthy recitation of the facts adduced at trial. While the comment, when taken out of context, appears to be an impermissible statement of the prosecutor's personal belief in the guilt of the accused, we find the statement, taken in context, is not of the character necessitating reversal. The State's attorney did not imply to the jury that he had personal knowledge of facts not presented to them indicating the defendant's guilt.
The defendant also argues that the prosecutor, in telling the jury about the serious risks involved in the perpetration of armed robbery, improperly interjected personal comments and opinion. Defendant cites the following comments by the State's attorney:
"* * * I thought during this case, `What if I had been there?' I probably wouldn't have done anything, I hope. I probably would just step back and keep my mouth shut. But what if I had gotten riled and wanted to try to stop these fellows? I'd probably be dead. That's what would have happened. There's not enough money in wages or profit to pay these people or to pay any of you to undertake this kind of risk. Now, that's why I feel strongly about these cases. * * *"
These hypothetical comments were not sufficiently inflammatory and beyond the realm of fair comment on the evidence to warrant a reversal. See, State v. Daniels, 262 La. 475, 263 So.2d 859 (1972).
Defendant further urges that the State's attorney improperly commented on the credibility of the State's witnesses. The comments alleged to be offensive are the following:
"* * * Now, we had one witness here that I was especially proud of. He was a very brave little thirteen year old boy. Now, that's a brave little man because he has to live in Bogalusa where these tough fellows live too.
"* * *
"You heard this little 13 year old fellow get up here and testify. Now, most of you have children. I have three. Mrs. Weaks has taught two generations of our children in Bogalusa, and you can tell when a kid is lying. You can tell. One of them comes in fibbing to me, it's written all over his face.
"* * *
"You saw this little fellow testify. And if he wasn't telling the truth, then I'm a fool. That's all I have to say about it. * * *"
It is permissible for the prosecutor to argue facts appearing in the record which bear on the credibility of witnesses. State v. West, 319 So.2d 901 (La.1975). Of course, the prosecutor cannot properly refer, explicitly or implicitly, to facts bearing on witness credibility which have not been presented to the jury. State v. Brown, 319 So.2d 409 (La.1975); United States v. Lamerson, 457 F.2d 371 (5th Cir. 1972). We do not find the comments herein objected to sufficiently improper to require a reversal.
*777 Additionally, we observe that similar argument was utilized by defense counsel in his closing argument:
"* * * Now, is Joe Lewis [Louis] telling the truth? I submit to you that he is not. * * * Joe Lewis [Louis] lied, and the reason he lied is he robbed that store. His testimony was affected by what he thought would happen to him if he didn't convict the other people.
"* * *
"[Lonnie Carl May] did not give Joe Lewis [Louis] a gun. Joe Lewis [Louis] lied when he said that. * * *"
We conclude, for the foregoing reasons, that defendant's twelfth assignment of error does not demonstrate reversible error.
ASSIGNMENTS OF ERROR NOS. 13, 14 and 15
Defendant contends the trial court erred in denying his motion for new trial based on the alleged insufficiency of the evidence to support the verdict, on the failure of the trial judge to order Officer Yarbrough and Rose Saraceno to talk with defense counsel, and on the ground that the jury was confused as to whether the accused was charged as a principal or an accessory.
The trial judge's refusal to order Officer Yarbrough and Rose Saraceno to talk with defense counsel has been discussed in this Court's treatment of assignment of error number three, and we therein found no reversible merit in the position taken by the defendant.
Defendant's motion for a new trial, insofar as it was based on the alleged insufficiency of the evidence to support the verdict obligated the trial judge, independently of the jury's determination, to pass on the sufficiency of the evidence. State v. Landrum, 307 So.2d 345 (La.1975); State v. Jones, 288 So.2d 48 (La.1974); State v. Gilbert, 286 So.2d 345 (La.1973); State v. Daspit, 167 La. 53, 118 So. 690 (1928).
If we were able to determine from the record that the trial judge independently had passed on the sufficiency of the evidence, in accordance with the duty imposed upon him by La.Code of Criminal Procedure article 851(1), defendant's contention that the verdict was contrary to the law and the evidence would present nothing for our review unless no evidence appeared in the record supporting one of the essential elements of the offense. State v. Landrum, supra; State v. Jones, 303 So.2d 486 (La. 1974); State v. Gilbert, supra.
We find some evidence in the record as to each element of the offense which, if believed, would support defendant's conviction. However, there is nothing in the record, beyond the trial judge's mere denial of the motion for new trial, to indicate whether the trial judge independently decided that the evidence was sufficient to support the verdict, or whether he relied on the jury's determination of the defendant's guilt.
Although this is not a case in which the record affirmatively indicates that the trial judge failed to decide independently the question of the sufficiency of the evidence, as was the case in State v. Jones, 288 So.2d 48 (La.1974), wherein we reversed and remanded in order for the trial judge to make that ruling, neither is it a case in which the record affirmatively demonstrates the trial judge's satisfaction with the sufficiency of the evidence, as was the case in State v. Landrum, 307 So.2d 345 (La.1975). Because we have already determined that the case must be remanded, we instruct the trial judge to clarify the reasons for his denial of defendant's motion for new trial insofar as that motion was based on the alleged insufficiency of the evidence to support the verdict.
Defendant, in his unsuccessful motion for new trial, also alleged that the trial court erred in allowing the jury to return a verdict of guilty of armed robbery against the accused because the jury was "obviously confused" as to whether the defendant was charged as a principal or an accessory to the crime. Defendant urges that the ends of justice would be served by a new trial. La.C.Cr.P. art. 851(5).
Defendant's allegation that the jury was confused as to the charges leveled against *778 the defendant is based on the following circumstances:
The jury, after having retired to consider its verdict, returned to the courtroom with a question. This exchange took place:
"THE COURT:
"Which of you gentlemen is the foreman? I understand you have a question of me?
"[THE FOREMAN]:
"Yes, sir, we understand this man is being tried for accessory to armed robbery.
"THE COURT:
"No, he is being charged with armed robbery, not accessory.
"[THE FOREMAN]:
"Why is simply robbery on it?"
Thereupon the trial judge, having previously charged the jury as to the responsive verdicts in an armed robbery prosecution in accordance with La. Code of Criminal Procedure articles 804(B) and 814, again explained the verdicts responsive to a charge of armed robbery, offering these observations:
"* * * The law says that when the greater charge includes any other charge that can be included in it, I have to give you an instruction as to the law on both of them.
"* * *
"Now, we are dealing here with armed robbery, and the law says that the responsive verdicts to armed robbery are: guilty, guilty of simple robbery and not guilty. Now,and again, I'm not trying to be cagey with you, but the law says that the trial Judge cannot comment on the facts of the case to the jury, because you are the Judges of the facts, not me. I might have an opinion but I can't express it to you and I shouldn't even give you a suggestion of what my opinion is. You are the Judges of the facts. Now, when the law says that the man can be foundyou can bring back one of three responsive verdicts and ten of you have to agree on one-guilty of armed robbery, guilty of simple robbery or not guilty. Now, the only distinction between guilty of armed robbery and guilty of simple robbery is that of the weapon. And I would go back to the basic definition. Armed robbery is the theft of anything of value from the person of another or which is in the immediate control of another by use of force or intimidation while armed with a dangerous weapon. And I am going to read the other. Simple robbery is the theft of anything of value from the person of another or which is in the immediate control of another by use of force or intimidation. The same exact wording up to that point but not armed with a dangerous weapon. Now again, I'll read you the definition of principal which is designed to put the principals all in the same boat together. And if you find that a person is a principal within the definition of Article 24, which says that all persons concerned in the commission of a crime, whether present or absent and whether they directly commit the act constituting the offense, aid and abet in its commission or directly or indirectly counsel or procure another to commit the crime are principals. So consequently, without getting into the facts of this case, if two people go to commit an armed robbery and only one has the weapon, the one who does not have the weapon can be a principal as well as the one who does. Now, if you found, as a matter of fact, that there is no weapon involved, that's why simple robbery is a responsive verdict. They are the same type crime, but the difference is while armed with a dangerous weapon, or not armed with a dangerous weapon. And that's a fact question that you have to reach. Now, have I helped you or hurt you? If you're not clear, tell me and I'll try to work it out with you.
After the judge's explanation, defendant requested that he charge the jury as to the definition of accessory. The judge at first declined to do so, because the defendant had not been charged as an accessory. Nevertheless, at defendant's insistence, the trial judge recalled the jury and read to them La.R.S. 14:24 and 25. The judge did *779 not, however, specifically instruct the jury that, if they were convinced the defendant was merely an accessory, they should not return a guilty verdict against him. Defendant had asked the judge to so charge the jury, but the record reflects no objection by the defendant to the judge's failure to do so.
Contemporaneous objection by the accused is a necessary prerequisite to appellate relief on an alleged inadequate jury charge. State v. Mitchell, 319 So.2d 357 (La.1975). Further, special requested charges are to be in writing. La.C.Cr.P. art. 807. Nevertheless, defendant now assigns as error the failure of the trial judge to charge the jury that if they found the defendant merely an accessory to the armed robbery, they should acquit him of the armed robbery charge.
Were we to disregard the procedural defects presented by this assigned error, we would be forced to conclude that defendant's assertions lack substantive merit.
The trial judge's additional instructions to the jury were sufficient to clear up any confusion they may have had concerning the charges lodged against the defendant. The trial judge clearly instructed the jury that the accused was charged with armed robberynot as an accessory thereto. He explained why simple robbery was included in the list of responsive verdicts. His initial instruction and explanation taken together with his supplemental instruction abundantly satisfy the requirements of La. Code of Criminal Procedure article 804.
Defendant has not demonstrated that the trial court abused its discretion in denying his motion for new trial. State v. Landrum, 307 So.2d 345 (La.1975); State v. Thomas, 240 La. 419, 123 So.2d 872 (1961); State v. Simpson, 184 La. 190, 165 So. 708 (1936).
These assignments of error lack merit.
ASSIGNMENT OF ERROR NO. 16
Defendant urges this Court to find the sixteen year sentence imposed by the trial court excessive, arguing that the defendant, the "least culpable" of the three principals to the crime, was given a longer sentence than his accomplices (who pleaded guilty and received sentences of nine and twelve years), because he pleaded not guilty and thereby put the State to the trouble and expense of proving its case at trial.
We are unwilling to conclude on the basis of the record that the trial judge arbitrarily and flagrantly abused his sentencing powers, as suggested by the defendant. The alleged plea negotiations and the trial court's supposed knowledge of them, referred to in defendant's brief, are not matters of record. The record does reflect, however, the jury's determination that Lonnie Carl May was guiltyas a principalof the crime of armed robbery. The defendant's own testimony acknowledges his prior felony convictions for burglary and theft. The record further reflects that the trial judge ordered a pre-sentence investigation and report, in accordance with La.Code of Criminal Procedure article 875, and that the judge relied on that report in sentencing the defendant.
In sum, we are unwilling to assume, as defendant urges us to do, that the disparity in sentences between the defendant and his co-participants who pleaded guilty, is the result of improper judicial conduct.
The sentence imposed in the present case is within the limits prescribed by La.R.S. 14:64, and is not cruel, unusual or excessive in violation of the Eighth amendment to the United States Constitution or of Article I, § 20 of the Louisiana Constitution.
For the reasons assigned, defendant's conviction and sentence are affirmed but the case is remanded for further proceedings in accordance with the views expressed herein, reserving unto the trial court the authority to grant a new trial herein and reserving the defendant's rights to appeal from any adverse ruling by the trial court.
AFFIRMED CONDITIONALLY AND REMANDED.
SANDERS, C.J., and SUMMERS and MARCUS, JJ., concur.
NOTES
[1] "Now, did Joseph Magee also identify any one atthe police station?

"Yes, sir, he walked in."
[2] Because Sgt. Penton stopped short of testifying that Magee identified Lonnie Carl May at the police station, we need not consider whether Magee's earlier affirmative response to the State's question, "and you never knew this man [Lonnie Carl May] prior to April 27th, the day you identified him?" (emphasis supplied) was sufficient prior testimony by Magee (the declarant) to render Sgt. Penton's hearsay testimony cumulative, corroborative, and therefore harmless under the rationale of State v. Ford, supra.