616 So.2d 225 (1993)
STATE of Louisiana, Plaintiff/Appellee,
v.
Elmer RICHARDSON, Defendant/Appellant.
No. 92-KA-836.
Court of Appeal of Louisiana, Fifth Circuit.
March 17, 1993.
*226 Dorothy Pendergast and Ronald J. Bodenheimer, Asst. Dist. Attys., Parish of Jefferson, Gretna, for plaintiff/appellee.
Arthur Harris, New Orleans, for defendant/appellant.
Before GAUDIN, DUFRESNE and GOTHARD, JJ.
GOTHARD, Judge.
Defendant, Elmer Lee Richardson, was charged by bill of information with five counts of attempted first degree murder in violation of LSA-R.S. 14:27, 14:30.[1] He was arraigned on April 4, 1991 and pled not guilty. Prior to the commencement of trial on March 17, 1992 the State entered a nolle prosequi as to three of the five counts and defendant went to trial on the remaining two. At the conclusion of the two day trial, the jury returned a verdict of guilty of attempted manslaughter on both counts. Subsequently, on May 26, 1992 the trial court sentenced the defendant to serve seven *227 years at hard labor. However, the court suspended five of the years, placed the defendant on active probation for five years and ordered that the defendant serve the two remaining years without benefit of parole, probation or suspension of sentence. Defendant appeals his conviction and sentence. We affirm.
FACTS
On the early morning of January 19, 1991, several officers of the Gretna Police Department met in order to formulate a plan to execute a search warrant which had been obtained in their investigation of illegal gambling being conducted at the Hop-Loi Bida, a pool hall located in Gretna, Louisiana. Having learned through surveillance that there were armed security guards stationed at the entrance which consisted of two glass doors and that the entrance was kept locked and only opened by the guards in order to allow customers to enter and exit, the officers decided to rush the entrance when the door was opened "thereby using the element of surprise."
After the officers arrived at the Hop-Loi Bida, Officer Contranchis positioned his unit "across the parking lot" where he could observe the entrance while the other officers composing the entry team gathered in the alley along side the building. Subsequently, upon observing a security guard, later identified as the defendant, open the door for a customer to exit, Officer Contranchis gave the radio signal to the entry team to advance. The team, composed of Officers Lloyd, Covell, Dunn, Boudreaux and Koenig, "rounded out the alleyway" and ran towards the entrance shouting "Police. Search Warrant." All officers were dressed in police vests bearing the City of Gretna Police insignia except for Officer Koenig who was in uniform. When the defendant observed the approaching officers, he stepped inside and attempted to close the door behind him, but before he could do so Officer Lloyd grabbed the door handle and shouted "Police. Search Warrant. Open the door." The two men then struggled over the door as Officer Lloyd continued to shout; however, the defendant was eventually able to lock the door.
Thereafter, the defendant walked towards the entrance to the back room and shouted to the customers. He then turned around and fired two shots in the direction of the officers who were standing in front of the entrance. One bullet struck the metal frame of one of the doors directly in front of Officer Dunn, and the other one struck the wall surrounding the doors behind which Officer Boudreaux was standing. To ensure the safety of customers who had entered the front room with the defendant, the officers did not return fire.
At the same time the defendant fired upon the officers, Officer Boudreaux struck one of the doors with a ramming device. But, the door did not shatter and a second strike only punctured a hole in it. Subsequently, the other security guard unlocked the door. When the officers entered the building, the defendant dropped to the ground and relinquished his weapon. The defendant was then apprehended.
On appeal the defendant assigns three errors. In the first assignment defendant contends that the trial court erred in refusing to give defendant's requested special jury instructions concerning aggravated assault and self-defense.
Prior to closing argument the trial judge noted that he had made available to the state and defense copies of the jury charges, except the charge on self-defense which would be produced later. Defense counsel objected stating the following:
We had requested in chambers that the Court include a charge relative to the offense of aggravated assault. The Court had denied that request and for the record we though it was appropriate because it was an element that is not responsive, but we felt is properly placed before the jury because if they felt that what the defendant did was, in fact, an aggravated assault then they would understand that they had to find him not guilty because it is another crime for which he has not been charged.

*228 Second, we object to the Court's refusal to use the proposed Jury Charges No. 1, 2, 3, and 5 introduced by the defense.
Subsequently, when the judge asked both counsel if they had seen the charge on self-defense, defense counsel had no objection to the charge nor did he indicate on the record that he had submitted a proposed charge on self-defense. In brief to this court defendant asserts that he requested a special jury charge on self-defense pursuant to LSA-R.S. 14:19. However, those jury charges were not made a part of the record.
Because only that which is in the record may be reviewed by the court, State v. Oubichon, 422 So.2d 1140 (La.1982), the issue concerning the denial of a charge on self-defense has not been perfected for review. See State v. Rayford, 348 So.2d 990 (La.1977) where the court was unable to review the trial court's refusal to give a requested special charge because it was not submitted in writing, nor was its substance or wording contained in colloquy of counsel and the court, nor anywhere else in the record. Such is the case here. However, since defense counsel revealed in his colloquy that he had requested a charge on aggravated assault, the refusal to give such a charge has been perfected and will be addressed.
LSA-C.Cr.P. art. 814 lists the only verdicts responsive to an attempted first degree murder indictment as guilty, guilty of attempted second degree murder, guilty of attempted manslaughter guilty of aggravated battery and not guilty. Instructions on these permissive verdicts are mandatory. State v. Jackson, 450 So.2d 621 (La.1984).
LSA-C.Cr.P. art. 802 obligates the trial judge to charge the jury as to the law applicable to the case. Special requested jury charges are governed by LSA-C.Cr.P. art. 807 which provides that a special charge shall be given by the court if it does not require qualification, limitation or explanation, and if it is wholly pertinent and correct. State v. Johnson, 438 So.2d 1091 (La.1983). Consequently, the trial court is required to charge the jury, when properly requested, as to the law applicable to any theory of defense which the jurors could reasonably infer from the evidence. State v. Marse, 365 So.2d 1319 (La.1978). However, this charge must be supported by the evidence presented at trial, because the trial court is not required to instruct the jury on abstract principles of law. State v. Telford, 384 So.2d 347 (La.1980). The refusal to give a requested special charge does not warrant reversal of a defendant's conviction unless it prejudices substantial rights of the accused. LSA-C.Cr.P. art. 921; State v. Marse, supra.
In the instant case the trial court instructed the jury on the elements of the possible verdicts, and explained that, if the state failed to prove beyond a reasonable doubt that the defendant was guilty of either the offense charged or of a lesser responsive verdict then their verdict was to be not guilty. Therefore, the jury had sufficient information without the special jury charges to understand that, should it find the defendant was only guilty of aggravated assault, then it should return a verdict of not guilty to attempted first degree murder. Under these circumstances the trial court's failure to give a requested charge on a nonresponsive verdict does not constitute reversible error. State v. Marse, supra. This assignment is without merit.
In his second assignment of error defendant asserts that the State failed to present sufficient evidence of the defendant's specific intent to kill, an essential element of the crime charged, and to prove that the defendant did not act in self-defense.
In evaluating the sufficiency of the evidence, the standard to be used by the appellate court is whether viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt of every element of the crime charged. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Mussall, 523 So.2d 1305 (La.1988); State v. DiLosa, 529 So.2d 14 (La.App. 5th Cir.1988), writ denied, 538 So.2d 1010 (La.1989).
*229 The defendant was convicted of attempted manslaughter in violation of LSA-R.S. 14:27 and 14:31.
LSA-R.S. 14:27 provides in pertinent part that:
Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.
LSA-R.S. 14:31 provides in pertinent part as follows:
Manslaughter is:
(1) A homicide which would be murder under either Article 30 (first degree murder) or Article 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self control and cool reflection. Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender's blood had actually cooled, or that an average person's blood would have cooled, at the time the offense was committed.
An essential element of attempted manslaughter is the specific intent to kill. State v. Butler, 322 So.2d 189 (La.1975). Thus, a person having the specific intent to inflict great bodily harm may lack the intent to commit murder, as he does not necessarily have the intent to kill another human being. State v. Butler, supra; State v. Lee, 467 So.2d 1341 (La.App. 5th Cir.1985).
Specific intent is: "that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." LSA-R.S. 14:10(1). Since specific intent is a state of mind, it need not be proven as a fact but may be inferred from the circumstances of the transaction and the actions of the defendant. See State v. Graham, 420 So.2d 1126 (La.1982).
When circumstantial evidence is used to show specific intent, LSA-R.S. 15:438 should be considered as it provides a rule regarding the use of such evidence. The rule restrains the fact finder, as well as the reviewer on appeal, to accept as proven all that the evidence tends to prove, and then to convict only if every reasonable hypothesis of innocence is excluded. State v. Lilly, 468 So.2d 1154 (La.1985).
The determination of whether the requisite intent is present in a criminal case is for the trier of fact, and a review of the correctness of this determination is to be guided by the Jackson standard. State v. Huizar, 414 So.2d 741 (La.1982).
All of the five officers who composed the entry team testified that the defendant fired two shots from inside the building in their direction at head level as they stood in front of the entrance after their advance was stopped when the defendant locked the door; notwithstanding the fact that the officers continued to identify themselves as officers and to indicate that they had a search warrant. One of the shots struck the metal frame of one of the doors directly in front of Officer Dunn while the other struck the surrounding wall behind which Officer Boudreaux was standing.
The defendant testified that when he realized, "that we was fixing to get robbed" he fired two warning shots in an attempt to make the intruders leave after one of the subjects momentarily prevented him from fully locking the door and one kicked through the bottom of one of the glass doors. The defendant denied he was attempting to kill anyone and stated that he fired into the metal frame of the door and surrounding wall to ensure that the bullets would not penetrate the building and go outside. He stated that he did not hear any shouts by the subjects identifying themselves as police officers or stating that they had a search warrant, and he was not sure that the subjects were police officers until he observed one of the officers enter the building dressed in full uniform. However, the jury as the trier of fact apparently rejected this testimony. Because it is *230 the role of the fact finder to weigh the respective credibilities of the witnesses, an appellate court will not second guess the credibility determinations of the trier of fact beyond the sufficiency evaluations under the Jackson standard. State v. Richson, 501 So.2d 885 (La.App. 5th Cir.1987).
Viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found beyond a reasonable doubt that the defendant acted with specific intent to kill when he discharged a lethal weapon aimed in the direction of the officers. See State v. Odom, 511 So.2d 1214 (La.App. 2d Cir.1987), writ denied, 515 So.2d 446 (La.1987).
LSA-R.S. 14:19 sets out the standard to be applied in determining whether the use of force or violence on the person of another is justified, when such force or violence does not result in death:
The use of force or violence upon the person of another is justifiable, when committed for the purpose of preventing a forcible offense against the person or a forcible offense or trespass against property in a person's lawful possession; provided that the force or violence used must be reasonable and apparently necessary to prevent such offense, and that this article shall not apply where the force or violence results in a homicide.
Thus, the defense of self-defense in a non-homicide situation requires a dual inquiry; an objective inquiry into whether the force used was reasonable under the circumstances; a subjective inquiry into whether the force was apparently necessary. State v. Freeman, 427 So.2d 1161 (La.1983).
Because the evidence overwhelmingly suggests that the defendant knew the persons attempting to enter the building were police officers who were executing a search warrant, the defendant's actions of firing at the officers was neither reasonable nor apparently necessary. This assignment is without merit.
In his final assignment the defendant contends the trial court erred in imposing an excessive sentence. The defendant did not file a motion to reconsider sentence in accordance with LSA-C.Cr.P. art. 881.1 That article provides in pertinent part as follows:
D. Failure to make or file a motion to reconsider sentence or to include a specific ground upon which a motion to reconsider sentence may be based, including a claim of excessiveness, shall preclude the state or the defendant from raising an objection to the sentence or from urging any ground not raised in the motion on appeal or review.
Because the defendant failed to file such a motion, he is precluded from raising these issues on appeal and this court is without jurisdiction to consider his claims. State v. Collins, 606 So.2d 585 (La.App. 5th Cir.1992).
However, we do note the following sentencing errors pursuant to our authority to consider errors on appeal that are discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence. LSA-C.Cr.P. art. 920(2).
Although the defendant was convicted on two counts of attempted manslaughter, the trial court imposed only one sentence. Because the sentences would more appropriately be concurrent than consecutive, and the term is reasonable under the circumstances, the single sentence will not affect substantial rights of the defendant making remand unnecessary. LSA-C.Cr.P. art. 921; State v. Blancaneaux, 535 So.2d 1338 (La.App. 5th Cir.1988). Moreover, the State has failed to raise the issue of illegally lenient sentence by motion or by argument to this court. LSA-C.Cr.P. art. 882; State v. Blancaneaux, supra.
We also note that the minute entry and commitment reflect that the trial court ordered two years of the defendant's sentence to be served without benefit of parole, probation or suspension of sentence. However, the transcript of sentencing reflects that the trial court made no such restriction. It is well settled that where there is a discrepancy between the minutes and transcript, the transcript must prevail. State v. Lynch, 441 So.2d 732 (La.1983). *231 Consequently, we amend the commitment to delete that restriction on the two year imprisonment portion of the sentence.
Further, we amend the commitment to give credit for time served as mandated by LSA-C.Cr.P. art. 880.
For the foregoing reasons, we amend the commitment to delete the restriction on parole, probation and suspension of sentence on the two year imprisonment portion of the sentence and to give the defendant credit for time served. We affirm the defendant's conviction and sentence as amended.
CONVICTION AFFIRMED; SENTENCE AMENDED, AND AS AMENDED, AFFIRMED.
NOTES
[1] The bill of information incorrectly spells defendant's first name as Elemer.