GOTHARD, Judge.
In this criminal case, the defendant, Andrew Harper, appeals his conviction and sentence.
The State charged the defendant by bill of information filed on December 20, 1990, with distribution of a controlled dangerous substance, to wit: cocaine, in violation of LSA-R.S. 40:967(A). The defendant pled not guilty. The trial began on August 21, 1991, and on the following day the jury returned with a verdict of guilty as charged. On October 24, 1991, the defendant filed a motion for new trial, which the court denied. On February 21, 1992, the trial court sentenced the defendant to imprisonment at hard labor for a term of thirty years with credit for time served and ordered the sentence to run consecutively with a ten year sentence imposed in another proceeding.[1]

FACTS

On the afternoon of October 18, 1990, Detective John Thevenot of the Jefferson Parish Sheriffs Office instructed Agent Cory Wilson to proceed to the Claiborne Gardens area of Westwego, Louisiana, in order to make an undercover purchase of crack cocaine from a black male suspect known as “Boo” or “Bootie” who was allegedly distributing the substance in front of a residence at 921 North Claiborne Parkway. Detective Thevenot supplied Agent Wilson with one hundred dollars and an audio transmitter and informed him that a confidential informant would accompany him.
*536 At approximately 1:45 p.m., Agent Wilson and the informant departed, followed shortly thereafter by the “cover team” who would position themselves in the vicinity of North Claiborne Parkway in order to monitor Agent Wilson’s transmissions. When Agent Wilson and the informant arrived at the North Claiborne residence, they observed a black male working on a vehicle in front of the house. Agent Wilson met with the defendant who introduced himself as “Bootie” and asked him for six rocks of crack cocaine. The defendant entered the residence, returned with six rocks, and advised Agent Wilson that the cocaine would cost one hundred dollars. Agent Wilson then handed the defendant the currency in exchange for the rocks.
After completing the transaction, Agent Wilson and the informant left the scene. When Agent Wilson later met with Agent Robert Lore, he turned over the evidence to him and advised him that the defendant introduced himself as “Bootie.” On the next day, Agent Lore remembered that one Adam Harper was nicknamed “Bootie,” and obtained a photograph of the defendant, which he placed on his desk. When Agent Wilson walked into his office, he asked him, “Do you know this guy?” Agent Wilson replied, “Yeah, that’s the guy I bought from yesterday.”
At trial, the defendant first presented a misidentification defense, maintaining that he had been mistaken for Eddie Boo, a suspect in a previous drug incident for which Kendrick Delahousseye was arrested, while “Boo” apparently was not. Delahousseye testified that Eddie Boo “hung out” on North Claiborne, where he sold crack cocaine. He said he knew Eddie Boo, that Boo’s and Harper’s families were close, and that Eddie Boo frequently visited the defendant’s residence. Other than a slight variance in complexion and weight, Boo and Harper looked pretty much alike. The defendant also testified that Boo was a regular visitor to his home.
Harper testified that he has never sold drugs and did not sell to Agent Wilson. He stated that on October 18 he was with his girlfriend, Patricia Lampton, at her apartment. Patricia Lampton testified and corroborated the defendant’s alibi testimony as to his whereabouts on the date of the offense.
The defendant made five assignments of error, the first two being:
ERROR NUMBER ONE: The jury erred in finding the defendant, Andrew Harper, guilty of LSA-R.S. 40:967(A), in that the evidence presented was insufficient to prove all the elements of the crime.
ERROR NUMBER TWO: The trial court erred in the denial of defense counsel’s pretrial motion to suppress identification.
In these assignments the defendant contends that the single photographic identification should have been suppressed, citing State v. Martin, 595 So.2d 592 (La.1992) and that the evidence was insufficient under Jackson v. Virginia, 443 U.S. 807, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), rehearing denied, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979), because a rational trier of fact could not reasonably reject the possibility that the defendant was incorrectly identified as a participant in this drug transaction.
I. Photographic Identification
A defendant who seeks to suppress an identification must prove that the identification itself was suggestive and that there was a likelihood of misidentification as a result of the identification procedure. State v. Lowenfield, 495 So.2d 1245 (La.1985), cert. denied, 476 U.S. 1153, 106 S.Ct. 2259, 90 L.Ed.2d 704 (1986), rehearing denied, 478 U.S. 1032, 107 S.Ct. 13, 92 L.Ed.2d 768 (1986). State v. Barnes, 592 So.2d 1352 (La. App. 5th Cir.1991).
In State v. Martin, supra, the court summarized the law on single photograph identification as follows, at 595:
The Supreme Court of the United States has noted that single photograph identifications should be viewed in general with suspicion. Simmons v. United States, 390 U.S. 377, 383, 88 S.Ct. 967, 970-71, 19 L.Ed.2d 1247 (1968). The Court held, in Manson v. Brathwaite, 432 U.S. 98,116, 97 S.Ct. 2243, 2254, 53 L.Ed.2d 140 (1977), that despite the existence of a suggestive pretrial identification, an in-court identifi *537 cation may be permissible if there does not exist a “very substantial likelihood of irreparable misidentification.” Id. (quoting Simmons, supra, [390 U.S.] at 384, 88 S.Ct. at 971).
Assuming a suggestive identification procedure, courts must look to several factors to determine, from the totality of the circumstances, whether the suggestive identification presents a substantial likelihood of misidentification. These factors were initially set out in Neil v. Biggers, 409 U.S. 188, 199-200, 93 S.Ct. 375, 382, 34 L.Ed.2d 401 (1972), and approved in Brathwaite, supra. They include: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness’s degree of attention; (3) the accuracy of his prior description of the criminal; (4) the level of certainty demonstrated at the confrontation; and (5) the time between the crime and the confrontation. Id. 432 U.S. at 114, 97 S.Ct. at 2253....
In Brathwaite the court added another factor to be considered: whether the officer was under pressure to make an identification.
The Martin court followed that the identification was tainted. However, here, although the identification procedure was suggestive because of the single photograph, we conclude that the procedure did not produce the likelihood of misidentification.
Agent Wilson had ample opportunity to view the suspect at the time of the offense, as it occurred in the afternoon. He observed the suspect outside a residence working on a car, met with him, and asked him for six rocks of crack cocaine. The suspect then entered the residence, returned with six rocks and stated that the price was one hundred dollars. Agent Wilson handed the suspect the hundred dollars and the suspect handed him the rocks.
Agent Wilson’s testimony indicated he paid close attention to the suspect, in that he was face to face with the suspect for about three minutes, was able to see him and had no difficulty seeing his face.
Although there was nothing in the record regarding a prior description of the suspect, Agent Wilson’s level of certainty of his identification of the photograph was high in that he immediately and positively identified the suspect pictured as the perpetrator. Additionally, because the identification occurred the following day, the amount of time which passed between the transaction and the identification was nominal.
It appears that Agent Wilson was under some pressure to acquiesce in the suggestion that the pictured suspect was the person from whom he purchased the cocaine, as he viewed the photograph at the request of Agent Lore and in his presence; however, Wilson testified that at the time of the identification he had no doubt that the pictured suspect was the perpetrator.
Furthermore, the defendant’s reliance on State v. Martin, supra, is misplaced, as that case is distinguishable from the one before us in several respects. In Martin the following deficiencies in the reliability factors were present: it was questionable whether the agent paid “a good deal of attention” to the suspect; the agent gave a description of the suspect which was “incorrect on every attribute except for race and gender”; approximately one month elapsed between the time the transaction and the identification constituting a substantial amount of time; and the agent who had previous difficulty with his “inability to make big cases” was under pressure to identify the suspect. Martin, supra at 595-596.
Considering the totality of circumstances, it appears that the photographic identification used in this case, while suggestive, nevertheless produced a reliable identification.
Therefore, the trial court did not err in refusing to suppress the identification.
II. Sufficiency of the Evidence
In evaluating the sufficiency of the evidence, the standard to be used by the appellate court is whether viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt of every element of the crime charged. Jackson v. Virginia, supra; State v. Mussall, 523 So.2d 1305 (La.1988); State v. Richardson, 616 So.2d 225 (La.App. *538 5th Cir.1993). Employing the Jackson standard, the state is required to negate any reasonable probability of an incorrect identification in order to carry its burden of proof. State v. Smith, 430 So.2d 31 (La.1983); State v. Duvio, 511 So.2d 821 (La.App. 5th Cir. 1987).
To convict the defendant in the instant case, the prosecution was required to prove that the defendant, while having the specific intent to do so, distributed cocaine. LSA-R.S. 40:967(A); State v. Martin, supra. Since it was undisputed that a willing sale of cocaine was made to Agent Wilson, the only issue was whether the offense was committed by the defendant.
To prove that it was the defendant who committed the crime, the state elicited testimony from Agent Wilson wherein he identified the defendant as the perpetrator of the offense while the defendant presented a mis-identification and alibi defense; thus the jury was presented with a credibility choice. As the trier of fact, the jury was free to accept or reject, in whole or in part, the testimony of any witness. State v. White, 472 So.2d 130 (La.App. 5th Cir.1985). Furthermore, the resolution of conflicting testimony about factual matters depends on a determination of credibility of the evidence, not its sufficiency. Id.
Here, it is apparent that the jury accepted the testimony of the state’s witnesses and rejected the misidentification and alibi testimony of the defendant and his witnesses. Because it is the role of the fact finder to weigh the respective credibilities of the witnesses, an appellate court will not second guess the credibility determinations of the trier of fact beyond the sufficiency evaluations under the Jackson standard of review. State v. Richardson, supra.
Viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have concluded that the state proved beyond a reasonable doubt that the defendant was guilty of distribution of cocaine and that it negated every reasonable probability of misidentification.
The third and fourth assignments of error arise from testimony of Patricia Lampton, defendant’s girlfriend and alibi witness, who remembered that on October 18, 1990, she and Harper spent the entire day at her Me-tairie apartment, having left the West Bank on the night of a shoot out.
ERROR NUMBER THREE: The trial judge erred in refusing to exclude as hearsay a Times-Picayune article and its contents over the objection of defense counsel where defense counsel had no opportunity to cross-examine the article’s author.
Ms. Lampton testified that a shoot out occurred in Claiborne Gardens around the corner from her mother’s house in which three people were injured. She testified on cross-examination that the shooting occurred on October 17th and she read about it in the Times-Picayune on October 18. The state called her as a hostile witness on rebuttal. She repeated her earlier testimony and stated that the shooting happened on the 17th “later in that night ... around about two in the morning.”
Thereafter, the prosecutor showed Ms. Lampton a copy of the Times-Picayune Westbank edition dated Friday, October 19, 1990, containing an article about the shooting and read its contents which revealed that two people were in critical condition after each was shot in the chest about 11:47 a.m. Thursday in a house near Westwego. When questioned further, Ms. Lampton stated that the shooting occurred “on the 17th going into the morning. It happened at 2:30 that morning, going into the 18th. That morning we did leave after the shooting and go — went home.” She also indicated that article reported “the same shooting.” Defense counsel then objected on the grounds of hearsay, which objection was overruled.
Next, the prosecutor showed Ms. Lampton the Times-Picayune New Orleans edition dated Thursday, October 18, 1990, and she admitted that she could not find an article referring to the shooting.
LSA-C.E. art. 801(C) defines hearsay as a statement other than one made by the de-clarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted.
*539 Here, the newspaper article was non-hearsay because it was not offered to prove the truth of the matter asserted. Rather, the article was offered to show that it did not appear in the newspaper until October 19, 1990, and thus Ms. Lampton could not have recalled her and the defendant’s whereabouts on the date of the offense from having read the article that same day. Therefore, the trial court did not err in refusing to exclude the article.
ERROR NUMBER FOUR: The trial judge erred in denying defense counsel’s request for Brady material, when police reports in the district attorney’s control directly contradicted the Times-Picayune article allowed in evidence, were favorable to the defendant and were material and relevant to the issue of guilt.
The police report contradicted the newspaper article as to the time the shoot out occurred. Subsequent to the introduction of the article, defense counsel requested that the police report be produced because it was Brady material; however, the trial court denied the request, ruling that the report did not come within the criteria of Brady.
Upon a defense request, the state must disclose evidence that is favorable to the defendant when it is material to guilt or punishment. Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Evidence favorable to the defendant includes both exculpatory and impeachment evidence. United States v. Bagley, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). The evidence is material if there is a reasonable probability, sufficient to undermine confidence in the outcome, that the evidence, if disclosed to the defense, would have changed the outcome of the proceeding or created a reasonable doubt that did not otherwise exist. United States v. Bagley, supra; State v. Knapper, 579 So.2d 956 (La.1991). The mere possibility that the evidence undisclosed prior to trial may have been helpful to the defense does not establish “materiality;” the reasonable probability of a different outcome is required. United States v. Bagley, supra; State v. Myers, 584 So.2d 242 (La.App. 5th Cir.1991), writ denied, 588 So.2d 105 (La. 1991), cert. denied, — U.S.-, 112 S.Ct. 1945, 118 L.Ed.2d 550 (1992).
In the instant case, the police report concerned a shooting which occurred prior to the offense and thus it would not have corroborated Ms. Lampton’s testimony as to the whereabouts of the defendant and herself at the time of the drug sale. The jury rejected their testimony in the face of Agent Wilson’s identification of the defendant as the perpetrator. Therefore, it appears that the production of a police report would not have created a reasonable probability of a different outcome.
ERROR NUMBER FIVE: The trial court respectfully did err in the imposition of a sentence of thirty years in the custody of the Department of Corrections.
The defendant contends that the trial court imposed an excessive sentence; however, the defendant failed to file a motion to reconsider sentence in accordance with LSA-C.Cr.P. art. 881.1. That article which became effective January 31, 1992,[2] provides in pertinent part as follows:
D. Failure to make or file a motion to reconsider sentence or to include a specific ground upon which a motion to reconsider sentence may be based, including a claim of excessiveness, shall preclude the state or the defendant from raising an objection to the sentence or from urging any ground not raised in the motion on appeal or review.
Because the defendant failed to file such a motion, he is precluded from raising this issue on appeal and this court is without jurisdiction to consider his claims. State v. Richardson, supra; State v. Morgan, 612 So.2d 302 (La.App. 5th Cir.1992); State v. Carter, 609 So.2d 261 (La.App. 5th Cir.1992); State v. Goff, 608 So.2d 1067 (La.App. 5th Cir.1992); State v. Collins, 606 So.2d 585 (La.App. 5th Cir.1992).
Our review of the record in this case revealed no errors patent on the face of the record.
*540 For the reasons assigned above, the conviction and sentence in this case are affirmed.

AFFIRMED.

. See State v. Harper, 618 So.2d 1251 (La.App. 5th Cir. 1993).

. The defendant was sentenced on February 21, 1992.