668 So.2d 1188 (1996)
STATE of Louisiana
v.
Gerardo HIDALGO.
No. 95-KA-319.
Court of Appeal of Louisiana, Fifth Circuit.
January 17, 1996.
*1191 John M. Mamoulides, District Attorney, Leigh Anne Wall, Assistant District Attorney, Gretna, for Plaintiff-Appellee.
Linda Davis-Short, Staff Appellant Counsel, Indigent Defender Board, Gretna.
Before BOWES and DUFRESNE, JJ., and REMY CHIASSON, Pro Tempore.
REMY CHIASSON, Judge, Pro Tempore.
The defendant was charged by grand jury indictment filed on November 18, 1993, with one count of first degree murder in violation of LSA-R.S. 14:30 and two counts of attempted first degree murder in violation of LSA-R.S. 14:27 and 14:30. When arraigned on December 3, 1993, the defendant entered a plea of not guilty to the charges. On June 17, 1994, the State amended the indictment to charge the defendant with one count of second degree murder and two counts of attempted second degree murder. After the trial court denied the defendant's motions to suppress evidence and confession on October 21, 1994, the defendant proceeded to trial on November 14, 1994. At the conclusion of the five-day trial, the jury returned with responsive verdicts of guilty of one count of manslaughter and guilty of two counts of attempted manslaughter. Thereafter, on December 9, 1994, the trial court sentenced the defendant to 15 years at hard labor on the manslaughter conviction and 7½ years at hard labor on each attempted manslaughter conviction with the sentences running concurrently with each other and with credit for time served.
On appeal, the defendant urges the following assignments of error:
1. The trial court erred in denying defendant's requested jury charges.
2. The trial court erred in denying defendant's request to conduct redirect [sic] examination after the prosecutor brought out new material on recross [sic] examination.
3. The trial court erred in admitting photographs marked State Exhibits 73 and 77.
4. The trial court erred in failing to allow defense counsel to inspect various witness statements for Brady/Giglio material.
5. The trial court erred in not requiring the prosecutor to instruct its witness that they had the right to speak to the defense.
6. The evidence was insufficient to uphold the verdict.
7. The trial court erred in not allowing defense counsel to use criminal history for criminal impeachment.
8. The trial court erred in imposing an excessive sentence.
9. The trial court erred in failing to inform defendant of the prescriptive period for seeking post conviction relief.
10. Also assigned as error are any and all errors patent on the face of the record.
After consideration of the law and evidence, we affirm the defendant's conviction and sentence, and remand with instructions.
On the morning of October 29, 1993, at approximately 4:00 a.m., a Toyota Corolla was parked in front of the Circle K located in the "Fat City" area of Metairie, Louisiana. The defendant, who was driving the four-door car, was seated in the front seat along with Cesar Ceballos, while Jessica Dupuy, Robert Mendoza, and Stacey Clark were seated in the rear seat. Ceballos and Clark exited the Toyota and entered the convenience store to purchase beer. The defendant then exited the Toyota and approached a Ford Bronco which was occupied by two girls and was parked in a nearby space on the driver's side of the Toyota.
Thereafter, a Buick Regal parked in the spot adjacent to the passenger side of the Toyota. The Buick was occupied by Craig Breaux, Troy Naquin, Heath Vegas (the homicide victim), and Kevin Prestenbach. Breaux, who was driving the two-door car, was seated in the front seat along with Naquin, while Vegas and Prestenbach were seated in the rear seat. Breaux opened his door in order to allow Prestenbach to exit the *1192 car, and Prestenbach entered the Circle K to buy beer.
Earlier that night, Clark had conversed with one of the males in the Buick at a bar in the "Fat City" area; however, there had been no altercations between any of these individuals.
While Clark, Ceballos, and Prestenbach were inside the store, Mendoza opened the rear passenger door of the Toyota and the door struck the door of the Buick. Breaux exited the Buick and started arguing with Mendoza. After Prestenbach exited the store, he approached Breaux, who was standing between the Toyota and the Buick. When Breaux told him that Mendoza had struck the Buick's door, Prestenbach began arguing with Mendoza. Naquin then exited the Buick on the passenger side, but remained on that side of the car.
Eventually, Prestenbach reached into the Toyota, grabbed Mendoza's leg and attempted to pull him out of the car. Dupuy, who had remained seated in the back seat, grabbed Mendoza, and both of them called for the defendant. When Ceballos later exited the store along with Clark, he stepped between the Toyota and the Buick, approaching Prestenbach and Breaux. Prestenbach then struck Ceballos, knocking him to the ground.
Meanwhile, the defendant walked to his Toyota and removed a loaded 9mm semi-automatic handgun. At that moment, Prestenbach heard someone holler "I'll kill all y'all mother fuckers." The defendant then leaned over the roof of the Toyota and began firing at Prestenbach who "looked like he was hitting" Ceballos. Upon hearing the gunshots, Prestenbach, Breaux, and Naquin began to flee. Subsequently, Prestenbach was struck in the back by the second or third shot while running in front of the Buick. Breaux was struck by the fourth shot as he was "like on my hands and knees running" behind a "little Toyota truck" which was parked two spaces to the passenger side of the Buick. After the defendant fired approximately three more shots, the Buick occupied by Vegas backed up into the gas pumps located in the parking lot.
Vegas suffered two gunshots wounds to his left arm which perforated the arm and reentered his chest causing damage to his internal organs which in turn caused bleeding. He later died from the bleeding.
According to the defendant's confession, Vegas "came out and he put his hand in his pocket.... The defendant further stated, "I was scared because you know they in their car and I'm in my car. I carry a gun, I don't know if they carry a gun, you understand? He reached in his pocket, I was scared, you understand?"
The defendant, who fired a total of seven shots, fled the scene in the Toyota along with Ceballos, Mendoza, and Dupuy. He discarded the gun while driving. However, police stopped the Toyota shortly thereafter and the gun was recovered.

AnalysisError # 1
The defendant contends that the trial court erred by rejecting his requested jury charges. Specifically, the defendant argues that the charges, which emphasized the definitions of serious or great bodily harm, were not included in the general charge and were relevant to defendant's claim of justification and self-defense.
A requested special charge shall be given by the court if it does not require qualification, limitation or explanation and if it is wholly correct and pertinent. It need not be given if it is included in the general charge or in another special charge which is given. LSA-C.Cr.P. art. 807; State v. Smith, 414 So.2d 1237 (La.1982). If the requested charge does not conform to the statutory requirements, it need not be given by the court. State v. Nuccio, 454 So.2d 93 (La.1984). The refusal to give a requested special charge does not warrant reversal of a defendant's conviction unless it prejudices substantial rights of the accused. LSA-C.Cr.P. art. 921; State v. Marse, 365 So.2d 1319 (La.1978).
The defendant's requested charges read as follows:

*1193 NO.: 9; SERIOUS BODILY HARM
In determining whether a person possessed the specific intent to do serious bodily harm, it has been held that "when a much stronger man hits a younger, smaller man, the [jury may] conclude that there was an intent to cause, at a minimum, unconsciousness and/or extreme physical pain." State v. Accardo, 466 So.2d 549, 552 (La.App. 5th Cir.1985); State v. Fuller 414 So.2d 306, 310 (La.1982).
NO.: 10; GREAT BODILY HARM
It has been held in Louisiana that great bodily harm could be caused by a foot shielded and protected by the tough rubber soles found on today's tennis and jogging shoes.
A person could be kicked in the head with such force as to cause facial lacerations, destroy his eye, break his nose, fracture his skull, injure his brain, or knock out teeth. State v. Taylor, 485 So.2d 117, 118-119 (La.App.2d Cir.1986).
NO.: 11; SERIOUS BODILY INJURY
The jury may conclude that an attacker intended to inflict serious bodily injury even if the person attacked was not mercilessly beaten. State v. Fuller, 414 So.2d 306, 310 (La.1982).
The trial court rejected the requested charges, but the court did charge the jury as follows:
The use of force or violence upon the person of another is justifiable when committed for the purpose of preventing a forcible offense against the person or a forcible offense or trespass against property in a person's lawful possession, provided that the force violence used must be reasonable and apparently necessary to prevent such offense and that this article shall not apply when the force of violence results in a homicide.
Justifiable Homicide. A homicide is justifiable and therefore not criminal when committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger. When committed for the purpose of preventing a violent or forcible felony involving danger to life or of great bodily harm by one who reasonably believes that such an offense is about to be committed and that such action is necessary for its prevention. The circumstances must be sufficient to excite the fear of a reasonable person that there would be serious danger to his own life or person if he attempted to prevent the felony without the killing.
* * * * * *
Defense of others. It is justifiable and therefore not criminal to use force or violence or to kill in the defense of another person when it is reasonably apparent that the person attacked could have justifiably used such means himself and when it is reasonably believed that such intervention is necessary to protect the other person. It does not matter whether the person attacked could have in fact used such force justifiably so long as it reasonably appeared to the defendant that the person attacked could have used such force.
A person who is the aggressor or who brings on a difficulty cannot claim the right of self-defense unless he withdraws from the conflict in good faith and in such a manner that his adversary knows or should know that he desires to withdraw and discontinued the conflict. Thus, if you find that a person was the aggressor or that he brought on the difficulty, you must reject that person's claim of self-defense unless you find that he withdrew from the conflict and that his withdrawal was in good faith and that he withdrew in a manner that put his adversary on notice that he wished to withdraw and discontinue the conflict.
We find no error in the trial court's refusal to give the requested jury charges. The substance of the requested charges was included in the charges the judge gave to the jury, and the given charges adequately stated the law regarding self defense and defense of others.

*1194 ERROR # 2

The defendant contends that the trial court erred in refusing to allow recross examination of Dr. Garcia, the State's expert witness in the field of forensic pathology, who performed the autopsy on Heath Vegas. The defendant argues that the State brought out a new issue on redirect examination when it questioned Dr. Garcia regarding the "normal" elbow use, thus entitling the defense to recross examination.
LSA-C.E. art. 611 D provides:
A witness who has been cross-examined is subject to redirect examination as to matters covered on cross-examination and, in the discretion of the court, as to other matters in the case. When the court has allowed a party to bring out new matter on redirect, the other parties shall be provided an opportunity to recross on such matters.
Permitting recross-examination of a witness is within the sound discretion of the trial court; and in the absence of an abuse of that discretion, and resulting prejudice, its ruling will not be disturbed on appeal. When no new issues are raised on redirect examination, recross-examination is not proper. State v. Maize, 94-0736 (La.App. 1st Cir. 5/5/95), 655 So.2d 500.
On cross-examination, Dr. Garcia testified as follows:
Q. Doctor, can you say with any degree of medical certainty that this young man was shot while sitting down?
A. No, he could have been standing up, but the position of his arm would still have to be the same that I said before.
* * * * * *
Q. Now, is the position of the arm that you've described consistent with reaching into the pants? If you were to put your arm in the position, would your hand be reaching into the pants or waistband of a pair of pants?
A. His arm is flexed at the elbow.
Q. Flexed, meaning bent?
A. Bent, that's correct and it is either at the side or close to his side. Where his hand is, I don't know.
Q. Is the arm, is the track of the wound, of each wound consistent with his hand being in a place where it could be around his navel or his belt?
A. As long as you have the elbow flexed his hand can either be up at the top of his chest or depending on how low down he can reach, to his groin area. His arm is most likely not fully extended.
Q. So, you can't exclude the possibility?
A. I cannot exclude the possibility, that is correct.
Q. That he was reaching into his pants?
A. Like I said, I have no idea where his hand was.
Thereafter, on redirect examination, Dr. Garcia testified as follows:
Q. Dr. Garcia, given the normal use of the elbow joint it's more likely and more medically probably that his hand was either located, that his arm and hand was either at rest somewhere close to his midline or at some distance from his midline at a normal angle, is that fair to say?
A. His elbow is flexed, his arm is either at his side or close to his body and his hand is going to where his hand is.
Considering the above, it appears that no new issue was raised on redirect examination. Although the prosecutor questioned Dr. Garcia regarding the normal use of the elbow joint, the doctor repeated her previous answer given on cross-examination. As such, recross examination was not warranted and the trial court did not err in refusing to allow recross-examination.

ERROR # 3
The defendant contends that the trial court erred in admitting two autopsy photographs of Vegas into evidence. The defendant argues that the photographs were cumulative and "particularly gruesome in that they showed a probe inserted into the wound." At trial, however, defense counsel only objected on the grounds that the photographs appeared to be gruesome. Because a new basis for an objection may not be raised for the first time on appeal, State v. Burdgess, 434 So.2d 1062 (La.1983), the defendant's *1195 assignment of error is limited to the grounds of gruesomeness.
The admission of gruesome photographs will not be overturned unless it is clear the prejudicial effect of the photographs outweighs their probative value. State v. Lindsey, 543 So.2d 886 (La.1989), cert. denied, 494 U.S. 1074, 110 S.Ct. 1796, 108 L.Ed.2d 798 (1990), rehearing denied, 495 U.S. 966, 110 S.Ct. 2579, 109 L.Ed.2d 761 (1990). No error will be found unless the photographs are so gruesome so as to overwhelm the jurors' reason and lead them to convict the defendant without sufficient other evidence. State v. Eaton, 524 So.2d 1194 (La.1988), cert. denied, 488 U.S. 1019, 109 S.Ct. 818, 102 L.Ed.2d 807 (1989), rehearing denied, 489 U.S. 1061, 109 S.Ct. 1332, 103 L.Ed.2d 600 (1989).
Post-mortem photographs at the scene or autopsy photographs of murder victims are admissible to prove corpus delicti, to provide positive identification of the victim, to corroborate other evidence establishing the cause of death, the manner in which death occurred, and the location, severity, and number of wounds. State v. Bourque, 622 So.2d 198 (La.1993).
One of the photographs in question shows the gun shot wound to the left upper arm and forceps are inserted into the wound which perforated the arm. The other photograph shows a probe "coming through" the gun shot wound located just above the left elbow and then entering the "reentrance" wound to the chest cavity.
The trial judge based her ruling on the fact that the photos illustrated the path of the bullet. The photographs were relevant to show the location and course of the wounds, thereby establishing the manner of death. The relevancy and probative value of the photographs outweighed any possible prejudicial effect they may have created in the jury's mind. Furthermore, the photographs were not so gruesome as to overwhelm the juror's reason and lead them to convict the defendant without sufficient independent evidence. As such, the trial court did not err in admitting the photographs into evidence.

ERROR # 4
The defendant contends that the trial court erred in refusing to allow defense counsel to inspect various witness statements for Brady/Giglio material. Specifically, the defendant argues that the trial court's in camera inspection of the State's entire file for Brady/Giglio material was insufficient and failed to provide the defendant with a fair trial.
Upon a defense request, the state must disclose evidence that is favorable to the defendant when it is material to guilt or punishment. Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); State v. Cobb, 419 So.2d 1237 (La.1982). The rule has been expanded to include evidence which impeaches the testimony of a witness, where the reliability or credibility of the witness may be determinative of guilt or innocence. Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972); State v. Cobb, supra. The trial court may conduct an in camera inspection to determine the nature of the requested material. State v. Cobb, supra; State v. Dunn, 94-776 (La. App. 5th Cir. 2/15/95), 651 So.2d 1378.
The standard for determining the materiality of evidence was set forth in United States v. Bagley, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985), as follows:
The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome.
United States v. Bagley, 473 U.S. at 682, 105 S.Ct. at 3383. The mere possibility that evidence undisclosed prior to trial may have been helpful to the defense does not establish "materiality;" the reasonable probability of a different outcome is required. State v. Wilson, 93-617 (La.App. 5th Cir. 1/25/94), 631 So.2d 1213, writ denied, 94-0476 (La. 11/4/94), 644 So.2d 1046.
In the instant case the trial court conducted an in camera inspection of the *1196 district attorney's file and stated the following:
... we looked at everything that was in that file and came to the conclusion that you had been given all material that was exculpatory and corroboration is almost at that stage a matter of opinion. In order words, you're trying to make me make a decision in advance what's corroborative, even though that's not necessary for the DA to provide it. We read the file, we pulled out whatever we thought, as a matter of fact, you have already been provided with copies of everything that was exculpatory in nature and that was pretty much going to be it.
Considering that the trial court noted that defense counsel had been provided with "everything that was exculpatory," it appears that the trial court's in camera inspection satisfied the requirements of Brady. Defense counsel repeatedly emphasized his belief that some of the witness statements would be corroborative of defendant's version of events. However, the trial court correctly noted the difference between corroboration and exculpation, and further noted that it was impossible to inspect the statements for corroboration when the court did not know the defense's theory. Thus the trial court did not err in refusing to allow defense counsel to inspect the statements.

ERROR # 5
The defendant contends that the trial court erred in refusing to order the prosecutor to instruct the State witnesses that they had the option of speaking to the defense.
The Louisiana Supreme Court has held that a witness may or may not speak with opposing counsel and that determination shall be made by the witness alone, but the State may not deny the defense access to the witness. State v. Harris, 367 So.2d 322 (La. 1979) citing State v. Hammler, 312 So.2d 306 (La.1975). In State v. Hammler, supra, the prosecutor instructed two principal State witnesses not to speak to any attorneys for the defense, and pursuant to those instructions, the witnesses refused to speak with one of the defense attorneys. In reversing the defendants' convictions, the Louisiana Supreme Court held that:
It is our opinion that the prosecuting attorney's conduct in advising the witnesses not to speak to defense attorneys significantly interfered with the defendants' constitutionally guaranteed right to effective counsel because their counsel were denied the opportunity to adequately prepare a defense.
State v. Hammler, 312 So.2d at 309.
At a pre-trial hearing, defense counsel noted that he had received "information that a member of the coroner's staff has been instructed by a member of the DA's staff who has a dual office of counsel to the coroner not to discuss the case with any of the defendant's agents...." Subsequently, the following exchange occurred:
MR. STRICKS [Defense counsel]:
Well, Judge, I think it would be improper for the lawyers to instruct the witnesses that they may not talk to anybody. If they're instructed that they have that choice, I think that that is sufficient.
THE COURT:
I have no intention of making any such instruction.
The defendant did not allege that he was denied the opportunity to prepare an adequate defense by the prosecutor's alleged instructions to a member of the Coroner's office. Nor did the defendant contend that any witness refused to discuss the case with the defense based on the advise of the prosecutor. Thus, the trial court did not err in refusing to so instruct the prosecutor.

ERROR # 6
The defendant contends that the evidence was insufficient to support the convictions of one count of manslaughter and two counts of attempted manslaughter. Specifically, the defendant argues that the State failed to prove beyond a reasonable doubt that the defendant had the requisite specific intent to kill to commit attempted manslaughter and that the defendant did not act in self-defense or in defense of others.
In evaluating the sufficiency of the evidence, the standard to be used by the *1197 appellate court is whether viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt of every element of the crime charged. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Mussall, 523 So.2d 1305 (La. 1988); State v. DiLosa, 529 So.2d 14 (La. App. 5th Cir.1988), writ denied, 538 So.2d 1010 (La.1989).

Specific Intent
LSA-R.S. 14:27 provides in pertinent part that:
Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.
LSA-R.S. 14:31 provides in pertinent part as follows:
Manslaughter is:
(1) A homicide which would be murder under either Article 30 (first degree murder) or Article 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self control and cool reflection. Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender's blood had actually cooled, or that an average person's blood would have cooled, at the time the offense was committed.
An essential element of attempted manslaughter is the specific intent to kill. State v. Butler, 322 So.2d 189 (La.1975). Thus, a person having the specific intent to inflict great bodily harm may lack the intent to commit murder, as he does not necessarily have the intent to kill another human being. State v. Butler, supra; State v. Lee, 467 So.2d 1341 (La.App. 5th Cir.1985).
Specific intent is: "that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." LSA-R.S. 14:10(1). Since specific intent is a state of mind, it need not be proven as a fact but may be inferred from the circumstances of the transaction and the actions of the defendant. See State v. Graham, 420 So.2d 1126 (La.1982).
When circumstantial evidence is used to show specific intent, LSA-R.S. 15:438 should be considered as it provides a rule regarding the use of such evidence. The rule restrains the fact finder, as well as the reviewer on appeal, to accept as proven all that the evidence tends to prove, and then to convict only if every reasonable hypothesis of innocence is excluded. State v. Lilly, 468 So.2d 1154 (La.1985).
The determination of whether the requisite intent is present in a criminal case is for the trier-of-fact, and a review of the correctness of this determination is to be guided by the Jackson standard. State v. Huizar, 414 So.2d 741 (La.1982).
The evidence adduced at trial established that the defendant fired his gun with a laser sighting device directly at the fleeing Prestenbach and Breaux from close range. The testimony of witness Stacey Clark also established that the defendant was not firing into the air, but was taking careful aim over the roof of his car. Viewing this evidence in the light most favorable to the prosecution, a rational trier of fact could have found beyond a reasonable doubt that the defendant acted with specific intent to kill when he discharged his lethal weapon aimed in the direction of Prestenbach and Breaux. See State v. Richardson, 616 So.2d 225 (La.App. 5th Cir.1993), writ granted in part, denied in part and remanded, 629 So.2d 342 (La.1993), on remand, 92-836 (La.App. 5th Cir. 12/14/94), 648 So.2d 945, writ denied, 95-0343 (La. 6/23/95), 656 So.2d 1011, where this court found that the defendant's actions of discharging a lethal weapon aimed in the direction of officers who were executing a search warrant and one shot struck metal frame of door directly in front of one of the officers while the other shot struck the surrounding wall behind which another officer *1198 was standing supported finding that the defendant acted with specific intent to kill.

Self-defense
When a defendant claims self-defense, the State must prove beyond a reasonable doubt that the defendant did not act in self-defense. State v. Garcia, 483 So.2d 953 (La.1986).
LSA-R.S. 14:20
A homicide is justifiable:
(1) When committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger.
Thus, the determination of the defendant's culpability by the trier of fact focuses on a two fold inquiry:
1. From the facts presented could the defendant reasonably have believed his life to be in imminent danger; and
2. Was deadly force necessary to prevent the danger.
State v. Dill, 461 So.2d 1130, 1137 (La.App. 5 Cir.1984), writ denied, 475 So.2d 1106 (La. 1985).
In the instant case the defendant armed and positioned himself behind the Toyota. After he began firing, Prestenbach, Breaux and Naquin began to flee while Vegas remained seated in the Buick. Even accepting as true the statement of the defendant that Vegas then exited the Buick and was reaching in his pocket, there was no testimony that Vegas pulled a weapon from his pocket; thus it appears that the defendant's apprehension of losing his life or receiving great bodily harm was unreasonable. As such a rational fact finder, after viewing the evidence in the light most favorable to the prosecution, could have found beyond a reasonable doubt that the defendant did not act in self-defense when he killed Vegas.
Moreover, it appears that the defendant was the aggressor in the encounter with Vegas, and thus could not claim self-defense. LSA-R.S. 14:21.

Defense Of Others
The defendant claimed to have acted in defense of Mendoza and Ceballos when he fired at Prestenbach and Breaux. Because no deaths resulted from the defendant's actions, LSA-R.S. 14:19 and 14:22 are the applicable statutes. LSA-R.S. 14:19 and 14:22 provide as follows:
§ 19. Use of force or violence in defense
The use of force or violence upon the person of another is justifiable, when committed for the purpose of preventing a forcible offense against the person or a forcible offense or trespass against property in a person's lawful possession; provided that the force or violence used must be reasonable and apparently necessary to prevent such offense, and that this article shall not apply where the force or violence results in a homicide.
§ 22. Defense of others
It is justifiable to use force or violence or to kill in the defense of another person when it is reasonably apparent that the person attacked could have justifiably used such means himself, and when it is reasonably believed that such intervention is necessary to protect the other person.
Even assuming that the State had the burden of proving beyond a reasonable doubt that the defendant did not act in defense of others, it appears that the burden was met.[1] When the defendant began firing, both Prestenbach and Breaux began to flee; thus no one was attacking Ceballos or Mendoza. Instead of ceasing fire, the defendant continued to shoot at the fleeing Prestenbach and Breaux, striking each of them. The defendant's actions of shooting Prestenbach and Breaux in defense of Ceballos and Mendoza were neither reasonable nor apparently necessary.

ERROR # 7
The defendant contends that the trial court erred when it denied a request by the defense *1199 to "use" pending charges against a State witness, Kevin Prestenbach, for the purpose of showing that he was biased or prejudiced against the defense.
In State v. Grace, 94-295 (La.App. 5th Cir. 9/27/94), 643 So.2d 1306, 1308, this court stated the following:
LSA-C.E. art. 609.1 entitled "Attacking credibility by evidence of conviction and crime in criminal cases" provides in pertinent part:
B. Convictions. Generally, only offenses for which the witness has been convicted are admissible upon the issue of his credibility, and no inquiry is permitted into matters for which there has only been an arrest, the issuance of an arrest warrant, an indictment, a prosecution, or an acquittal.
However, "Paragraph B's use of the word `generally' presumably acknowledges the possible use of arrests, indictments and the like where independently relevant to show bias." Handbook in Louisiana Evidence Law, Pugh, Force, Rault and Triche (1994).
In addition, LSA-C.E. art. 609(F), relative to civil proceedings, provides:
... [e]vidence of the arrest, indictment, or prosecution of a witness is not admissible for the purpose of attacking his credibility.
Official Comment (d) to Article 609 provides that:
Paragraph F is not intended to change the prior jurisprudence to the effect that evidence of arrest, indictment or prosecution may be admitted if it has relevance independent of the suggestion that the witness is unworthy of belief, as, for example, when independently relevant to show bias.
Although Article 609 applies to attacking the credibility of a witness in civil proceedings, the quoted comment cites criminal cases as its support.
In addition, LSA-C.E. art. 607(D)(1) states that "[e]xcept as otherwise provided by legislation: extrinsic evidence to show a witness' bias, interest, corruption, or defect of capacity is admissible to attack the credibility of the witness." Thus, Louisiana law allows the introduction of a witness' arrest and possible hope for leniency to show bias or interest in certain cases.
However, the defense was in fact allowed to interrogate Prestenbach about his pending charges and possible deals made with the prosecutor as evidenced by the following exchange:
Q. And now, the case that you have pending in Jefferson Parish now is also two counts of battery on police officers, isn't that correct?
* * * * * *
Q. All right, sir I'm going to show you what's been marked as a two page exhibit, Defense Exhibit No. 10 and ask you, sir, is that your name on that document?
A. Yes, it is.
Q. As the person accused, right?
A. Yes, it is.
Q. And the charge, can you read the charges that are pending against you there?
A. Battery on a police officer, battery on a police officer and simple criminal damage to property. That's not, that's not right.
Q. That's not right?
A. No, sir.
Q. That's not what you're presently under charge for?
A. No, sir.
* * * * * *
Q. Now, Mr. Prestenbach, aren't you especially concerned about being convicted of those three charges while you're on probation?
A. It's not the right charges, it's not the right charges anyway.
Q. What do you mean it's not the right charges?
A. I don't have no criminal property damage charge. I have a battery and assault on a police officer and a resisting arrest charge. This criminal damage, I don't know where you're getting this criminal property damage thing from.
Q. Well, you see, I showed you the certified copy

*1200 A. I know what you showed me, but that's not right.
Q. It's not right?
A. No, sir.
Q. Well, are you concerned about being convicted of the battery on two police officers?
A. Yes, sir, I'm concerned about it. I have an attorney that represents me on it. Would you like to speak to him about it?
Q. I'm going to ask you the questions, you don't ask me the questions.
A. Well, it's irrelevant, I mean, you talk to my attorney about it.
* * * * * *
Q. Mr. Prestenbach, is it your expectation that if you are convicted of those new offenses in Jefferson Parish that your probation will be revoked?
A. No, it won't.
Q. It's not?
A. No.
Q. You think that while you're on probation you can commit batteries on police officers and suffer no consequences?
A. It wasn't, I didn't commit the battery, that's what I was charged with.
* * * * * *
Q. Mr. Prestenbach, do you think that the District Attorney's Office can help you in those charges that are pending against you?
A. No, sir.
Q. Do you know, sir, that it is the same District Attorney's Office that is prosecuting this case and using your testimony?
A. No, sir.
Q. It's not the same?
A. No, sir.
Q. So, you think that no matter how you testify or how you behave in this matter, that you have no benefit to gain with the State?
A. No, sir.
Q. None?
A. None, none whatsoever.
Considering the above examination of Prestenbach by defense counsel, this assignment lacks merit.

ERROR # 8
The defendant contends that the trial court erred in imposing an excessive sentence. Specifically, the defendant argues that the record does not support the trial court's deviation from the sentencing guidelines in imposing sentence.
The trial court sentenced defendant to 15 years on the manslaughter conviction and 7½ years on each attempted manslaughter conviction, and the court ordered the sentences to be served concurrently. In imposing the sentences, the trial court gave the following reasons:
I wanted to place in the record too that we had received in advance Mr. Stricks' [defense counsel] motions for sentencing in accordance with Louisiana Sentencing Guidelines, as well as the motion for the Court to consider the defendant's exemplary conduct and the Court has taken those things into consideration in making its decision with regard to the sentencing. Following a jury trial the defendant was convicted of one count of manslaughter and two counts of attempted manslaughter. In determining the sentence to be levied, the Court considered the felony sentencing guidelines set out by the Louisiana Sentencing Commission. The Court is aware of the approximate range set out on the grid is 60 to 90 months on count No. 1 and three to five years for counts Nos. 2 and 3. However, in this case the Court has found it necessary to deviate from the guidelines, finding that the guidelines as written would deprecate from the seriousness of this particular offense. In making its determination the Court has considered both aggravating and mitigating circumstances. The Court found the following aggravating circumstances to apply: The offender knowingly created a risk of death or great bodily harm to more than one person, the offender used threats or actual violence in the commission of the offense, the offense resulted in a significant permanent injury to the victims and their families, the offender used a dangerous weapon in the *1201 commission of the offense and the offense involved multiple victims or incidents for which separate sentences have not been imposed. The Court found the following mitigating circumstances also applied: At the time of the offense to a degree the victim was the initiator, willing participant, aggressor, provoker of the incident or enticed the offender, at the time of the offense the capacity of the offender to appreciate the criminality of his conduct or to conduct the requirements of law was somewhat impaired, the offense was committed under circumstances which the offender reasonably believed to provide for a moral justification or extenuation of his conduct, the offender committed the offense without significant premeditation and the offender accepted responsibility for the offense and expressed genuine remorse.
Initially, it is noted that by Acts 1995, No. 942, effective August 15, 1995, the legislature repealed the sentencing guidelines and amended LSA-C.Cr.P. art. 894.1 to delete reference to those guidelines and to provide the sentencing guidelines now in effect. See State v. Guzman, 95-444 (La.App. 5th Cir. 11/15/95), 665 So.2d 512. As amended LSA-C.Cr.P. art. 894.1C now requires the court to state for the record considerations taken into account and the factual basis for imposing sentence.
The defendant was sentenced before the effective date of Act No. 942; however, the court in State v. Lennon, 95-0402 (La.App. 4th Cir. 9/15/95), 661 So.2d 1047, stated:
Where a sentencing court articulates the basis for the sentence, it would be a waste of judicial resources to vacate the sentence for failure to consider the old Guidelines and remand for resentencing under the new scheme which no longer requires consideration of those Guidelines.
See also State v. Hilton 95-0586 (La.App. 4th Cir. 11/16/95), 665 So.2d 124 and State v. Robertson, 94-1379 (La.App. 1st Cir. 10/6/95), ___ So.2d ___, 1995 WL 588325.
In the instant case the trial court adequately stated the considerations taken into account and the factual basis for the sentences; thus there is no need to address the sentencing guidelines. Furthermore, the sentences do not appear to be constitutionally excessive.
A sentence is constitutionally excessive if it is grossly out of proportion to the seriousness of the offense or is nothing more than a purposeless and needless infliction of pain and suffering. A sentencing is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. The sentence imposed will not be set aside absent a showing of manifest abuse of the trial court's wide discretion to sentence within statutory limits. State v. Bradham, 94-71 (La.App. 5th Cir. 5/31/94), 638 So.2d 428.
The concurrent sentences of 15, 7½, and 7½ are not disproportionate to the offenses nor do they amount to a purposeless and needless infliction of pain and suffering. By producing a gun and firing at several individuals, the defendant created a risk of death or great bodily harm to more than one person, and he in fact killed one person and injured two others. For his convictions of one count of manslaughter and two counts of attempted manslaughter, the defendant faced a potential sentencing exposure of 80 years, whereas the sentences imposed amount to 15 years. Therefore, the sentences are not constitutionally excessive.

ERROR # 9
The trial court erred in failing to inform defendant of the prescriptive period for seeking post conviction relief. The State concedes this error, and asks that the defendant be so informed.
LSA-C.Cr.P. art. 930.8 dictates that, except under certain limited circumstances, a defendant must file his application for post-conviction relief within three years after his judgment of conviction. Section C of the article provided that "[a]t the time of sentencing, the trial court shall inform the defendant of the prescriptive period for post conviction relief." The transcript of defendant's sentencing on December 9, 1994 reflects that the defendant was not so informed. However, failure to inform the defendant does not constitute a ground for reversing the sentence or remanding the case for resentencing. LSA-C.Cr.P. art. *1202 921. Rather, the appropriate remedy is to instruct the trial court to inform the defendant of the provisions of LSA-C.Cr.P. art. 930.8 by sending appropriate written notice to the defendant within ten days of the rendition of this opinion and to file written proof that the defendant received the notice in the record of the proceedings. See State v. Kershaw, 94-141 (La.App. 5 Cir. 9/14/94), 643 So.2d 1289. Therefore, we will remand the case for the trial court to so inform defendant.
Also assigned as error are any and all errors patent on the face of the record. For the purpose of an error patent review the "record" in a criminal case includes the caption, the time and place of holding court, the indictment or information and the endorsement thereon, the arraignment, the plea of the accused, the bill of particulars filed in connection with a short form indictment or information, the mentioning of the impaneling of the jury, the minute entry reflecting sequestration in a capital case, the verdict, and the judgment or sentence. See State v. Oliveaux, 312 So.2d 337 (La.1975) and State v. Weiland, 556 So.2d 175 (La.App. 5th Cir.1990).
A review of the record reveals the following error.
The record fails to show that the defendant was rearraigned on the amended charges. LSA-C.Cr.P. art. 555 provides that a failure to arraign the defendant is waived if the defendant enters upon the trial without objection thereto. Because the defendant did not object prior to trial, the error in failing to rearraign the defendant was waived.
Accordingly, for the reasons assigned above, we affirm the defendant's conviction and sentence, and remand for the trial court to instruct the defendant of the provisions of La.C.Cr.P. art. 930.8.
AFFIRMED AND REMANDED WITH INSTRUCTIONS
NOTES
[1] In State v. Barnes, 491 So.2d 42 (La.App. 5th Cir.1986) this court held that defendant in a non-homicide case has the burden of persuasion when self-defense is asserted as a defense.